Dominic Conti, administrator, *vs.* Brockton Ice &· Coal
Company.

Same *vs.* George W. Minnehan.

Plymouth.    May 12, 1936. — June 30, 1936.

Present: Rugg, C.J., Crosby, Donahue, Lummus, & Qua, JJ.

*Negligence,* Motor vehicle.  *Corporation,* Officers and agents.  *Agency,*
Scope of authority.  *Evidence,* Admissions.

A finding of negligence of the driver of a motor truck which backed into
a platform and caused the plaintiff's intestate, who was on the plat-
form, to fall, was not warranted in the absence of evidence that the
driver knew or ought to have known of the presence of the intestate
on the platform.
Testimony of a statement, offered as an admission by a corporation, by
one, described only as an "officer" thereof, was not admissible with-
out evidence of such officer's authority to bind the corporation.
At the trial of an action against a corporation for negligently causing
conscious suffering and the death of a person, a statement by the
president of the corporation that "they wanted to pay all expenses,"
in the circumstances was not an admission of liability by the corpora-
tion, since it carried no greater implication than of regret, sympathy
and benevolence.

Two actions of tort by the administrator of the estate
of Patsy Conti.  Writs in the Superior Court dated January
6 and January 12, 1932.

The actions were tried together before *Donahue,* J., who
ordered a verdict for the defendant in each action.  The
plaintiff alleged exceptions.

*G. L. Wainwright,* for the plaintiff.

*E. R. Langenbach,* (*S. P. Sears* with him,) for the de-
fendants.

Lummus, J.  There was evidence tending to prove the
following facts.  The defendant Minnehan, at the time in
question, was acting within the scope of his employment by
the defendant corporation in operating a motor truck which
had a closed cab with a window in the rear.  The plaintiff's
intestate, acting rightfully under a business arrangement

between his father and the defendant corporation, went with his brother to the ice house of the defendant corporation to get a cake of ice which he intended to take home in a wheelbarrow. He got up on a loading platform, about eight feet by twelve feet in size and elevated four feet or more above the ground, to which ran from the ice house a slippery inclined wooden runway down which cakes of ice could be pushed to the platform and thence loaded into vehicles. He carried a sharp pointed ice pick or pike about six feet long. The defendant Minnehan backed his empty truck a distance of thirty feet to the platform, for the purpose of loading the truck with ice. The evidence is contradictory as to what then happened. Both Minnehan and the brother, already mentioned, who was waiting at a distance of thirty feet or more from the platform, where he could hear but could not see, agree that the throat of the plaintiff's intestate was cut by the ice pick, and that he cried, "Help me!" It is not disputed that death resulted from the injury.

The theory of the case most favorable to the plaintiff, which is open under the pleadings, is that Minnehan, in backing the truck, ran forcibly into the platform, and shook it, causing the plaintiff's intestate, who was on the platform, to fall on the ice pick. Minnehan gives no support to this theory, but the brother, although admitting that he did not really see the occurrence, testified that "the truck hit the platform hard and shook the platform; that when the platform shook, he heard his brother [the plaintiff's intestate] say, 'Help me, boys.'" Beyond that, the brother gave no material evidence.

Minnehan, on the contrary, testified that when he started to back he looked through the window and around the side of the cab; that he could see the platform; that there was nobody on the platform that he could see when he started to back; that he did not back into the platform, but stopped short of it; that when he got off the truck the plaintiff's intestate was on the platform, standing with "one leg behind and one leg on the side of a cake of ice"; and that later the plaintiff's intestate walked on the runway, stumbled, and cut his throat on the ice pick.

Whether the plaintiff's intestate found a cake of ice on the platform, or pushed one down from the ice house, does not appear. If the latter, it may well be that he was not on the platform when Minnehan started to back the truck, and that Minnehan could not be expected to see him or to operate the truck with any regard for him. The brother was not shown to have been in a position where he could be seen by Minnehan. His presence with the wheelbarrow was therefore no warning that someone might be on the platform. We think that there was no evidence that Minnehan knew or ought to have known of the presence of the plaintiff's intestate on the platform when he backed the truck, if indeed the plaintiff's intestate was there at the time, and that consequently no duty and no breach of duty towards the plaintiff's intestate could be found. Upon the evidence, verdicts were properly directed for the defendants in these actions for conscious suffering and death.

The plaintiff contends that there was error in the exclusion of evidence offered by him. An admission of the liability of the defendant corporation, made by one McCarthy, who is described as "an officer" of the corporation, was properly excluded. No authority of McCarthy to speak for the corporation was shown.

The statement to the plaintiff by one Beaton, the president of the defendant corporation, that "they wanted to pay all expenses," was properly excluded for reasons other than lack of authority. The statement carried no greater implication of recognized liability than of regret, sympathy and benevolence, inspired by the tragedy which had befallen a friendly neighbor. This case is not governed by *Rosen* v. *Burnham*, 272 Mass. 583, 586, where a landlord, seeing the damage done to the goods of a tenant during alterations, made the statement that "he was going to make that good," and the jury were allowed to "deal with it as an admission of liability." In that case the statement was not evoked by human suffering, and could be found to imply an acknowledgment of liability to pay legal damages. Neither does this case fall within *Bernasconi* v.

*Bassi,* 261 Mass. 26, 28, where after a personal injury the defendant said to the plaintiff's father, who had asserted liability, "You bring your boy in the hospital, and . . . after tomorrow I come in your house, I fix it up, everything," and this was held capable of the meaning that the defendant undertook to pay legal damages as such, and thus admitted liability. The present case falls rather within *Wilson* v. *Daniels,* 250 Mass. 359, 364, *Kindell* v. *Ayles,* 263 Mass. 244, 248, and *Arnold* v. *Owens,* 78 Fed. (2d) 495, 497. See also *Anonik* v. *Ominsky,* 261 Mass. 65; *Tosti* v. *Rossetti,* 277 Mass. 553, 556, 557.

*Exceptions overruled.*