DUNBAR v. ADAMS.

1. PHYSICIANS AND SURGEONS—RES IPSA LOQUITUR—FRACTURED JAW —IMPACTED WISDOM TOOTH.

Negligence of dentist in extracting an impacted wisdom tooth *held,* not established by sole fact that jaw was fractured in the course of the extraction since to do so would employ the doctrine of *res ipsa loquitur,* which is not permissible in this jurisdiction.

2. SAME—NEGLIGENCE OF DENTIST—EXTRACTION OF IMPACTED WISDOM TOOTH—PROXIMATE CAUSE.

To establish actionable negligence on part of dentist who was engaged to extract an impacted wisdom tooth it is necessary to show he failed to follow the usual and ordinary practice of dentists of average ability practicing in same or similar localities and that the alleged negligence was the proximate cause of claimed injuries.

3. MALPRACTICE—EXTRACTION OF IMPACTED WISDOM TOOTH—EXPERT TESTIMONY—CONJECTURE—X-RAYS.

Expert testimony upon which plaintiff based his case in action for malpractice against dentist who fractured plaintiff's jaw in extracting an impacted wisdom tooth *held,* insufficient to establish negligence of defendant where opinion as to practice of taking X-rays, when difficulty was encountered, left matter conjectural that such procedure would have dictated a different method than the continued use of forceps after they had slipped off tooth several times.

4. SAME—NEGLIGENCE—PROXIMATE CAUSE.

Adjudged malpractice must rest upon negligence in commission or omission and, when charged upon omission, it must be made to appear that the negligence was the proximate cause of the injury.

5. NEW TRIAL—MALPRACTICE—DENTIST—FRACTURING JAW—POST-OPERATIVE TREATMENT—DAMAGES.

Denial of new trial to defendants, a dentist and his operator, in action for malpractice based on alleged negligence in fractur-

ing plaintiff's jaw when extracting an impacted wisdom tooth and for malpractice in post-operative treatment *held,* error, where evidence as to negligence in fracturing jaw was insufficient to take case to jury, there was evidence of malpractice as to post-operative treatment, and damages awarded for both alleged acts of malpractice were in one sum and cannot now be separated.

Appeal from Wayne; Marschner (Adolph F.), J. Submitted October 15, 1937. (Docket No. 108, Calendar No. 39,732.) Decided December 29, 1937.

Case by Harold B. Dunbar against Dr. Charles W. Adams, doing business as Dr. Adams Dentists and Associated Dentists, and Dr. S. W. Sanborn for personal injuries sustained by reason of malpractice. Verdict and judgment for plaintiff upon remittitur. Defendants appeal. Reversed and new trial granted.

*Douglas, Barbour, Desenberg & Purdy,* for plaintiff.

*Mason, Davidson & Mansfield (Carl F. Davidson,* of counsel), for defendants.

WIEST, J. This is an action against a dentist and his operator to recover damages for alleged malpractice in fracturing plaintiff's jaw while extracting the third molar or wisdom tooth on the right side. Trial was by jury, with verdict for $10,000 and judgment under ordered remittitur for $6,000. A new trial was denied and defendants prosecute review.

Plaintiff went to defendants to have 14 teeth on his lower jaw extracted. He was placed in an operating chair, with his hands strapped, cotton placed in his mouth to prevent downward passage of blood; his mouth propped open and a gas anesthetic administered. It is not claimed that this was out of the ordinary.

Plaintiff claims he was insensible until the operator started to extract the mentioned molar, and then the pain to his jaw was such that he endeavored to stop the operator but, with the cotton in his mouth and his hands strapped, he could only struggle and the operator paid no heed, although the forceps "slipped off the tooth a couple of times" and he heard the operator say to his assistant:

" 'Well,' he says, 'I think I better leave this go, it is not going to come,'—or something to that effect, and the assistant said to him, * * * 'Go ahead, if you let this man get out of the chair you will never get him back in again.' * * *

"So far as I know, Dr. Sanborn applied the forceps, or whatever instrument he was using, to the best of my knowledge, as near as I would say, six or seven times he slipped off that tooth before he finally managed to get it out. That six or seven times includes the first two or three times before he spoke to his assistant, that is, six or seven times altogether."

And when the tooth came out he sensed a cracking sound. The jaw was, in fact, fractured in the course of pulling the tooth, and when plaintiff was released from the mentioned restraint he claims he told the operator that he believed his jaw was fractured, but no examination was then made, nor when he renewed his complaint two days later, and only a verbal assurance given that he would be all right in time.

Four days after the tooth was extracted plaintiff went to a hospital, and there the fracture of his jaw was treated for an infection, known as osteomyelitis, and a silver wiring applied.

Plaintiff claims malpractice by defendants in failure to apply separate and individual treatment to the tooth when difficulty in pulling it was encoun-

tered manifesting an abnormality requiring special investigation; failure to desist from using an ordinary pulling forceps; failure to employ an operative procedure under disclosure of an X-ray picture, showing condition, position and nature of the roots of the tooth, and failure to give post-operative care.

Defendant Sanborn, the operator, testified that the tooth was partially unerupted; that he was familiar with that type of tooth and knew it would take more effort to extract it, but knew, just by manipulation, that it would come out. He could tell from looking at the tooth in what direction the roots were going; he used a regular lower forceps; he experienced some difficulty, but no more than usual for that type of tooth; there was nothing about the tooth to warrant taking an X-ray, and there was nothing to the extraction which he noticed that would lead him to believe the jaw was fractured.

The appearance of the tooth before extraction necessarily depends upon the description given by the operator. The fracture of the jaw in extracting the impacted wisdom tooth did not, in and of itself, establish negligence. No presumption of negligence could be based upon the sole fact that, in extracting the tooth, the jaw was fractured. To do so would employ the doctrine of *res ipsa loquitur* which is not permissible in this jurisdiction.

In *Donoho* v. *Rawleigh*, 230 Ky. 11 (18 S. W. [2d] 311, 69 A. L. R. 1135), an X-ray was taken and an elevator used and yet the jaw was fractured in extracting an impacted wisdom tooth.

Counsel for plaintiff recognized that, in order to establish negligence on the part of defendants, it was necessary to show that the operator failed to follow the usual and ordinary practice of dentists of average ability practicing in that or similar local-

ities, and also evidence showing that the alleged negligence was the proximate cause of plaintiff's injuries. To meet this burden plaintiff called experts who, in answer to hypothetical questions, expressed their views relative to the usual and ordinary practice of dentists of average ability in the locality, both in the extraction, when difficulty is experienced indicating an abnormality requiring investigation by X-ray and special appliances, and the giving of post-operative care.

The testimony of one of the experts related to the claim of negligence in the failure to give attention and treatment following the extraction.

Plaintiff's claim of malpractice, in extracting the tooth, rested upon the testimony of Dr. Muir, relative to the practice of taking an X-ray when difficulty in diagnosis or in the extracting of an impacted wisdom tooth is experienced, but his testimony lost probative force by his answers to questions propounded by counsel for plaintiff. The expert testified:

"A good operator would never proceed when he runs into difficulty without stopping and taking an X-ray. He can determine if he is running into difficulty by the sense of touch. It shouldn't be necessary for him to take hold several times and slip and do all those things as you describe.

"*Q.* What would the purpose of the X-ray be, doctor?

"*A.* The X-ray—it depends on the condition of the tooth in the first place. Oftentimes it is an unerupted or impacted wisdom tooth—I don't know whether this was or not—but if it is, take an X-ray to determine what you have to operate on; the position of the tooth; the way it lays and whether you should use forceps or an elevator.

"*Q.* That is the usual and ordinary practice?

"*A.* That is the usual practice.

"*Q.* Doctor, let us assume the same facts of that question, and add to it the tooth is erupted; then what is the ordinary practice?

"*A.* Then, if it is erupted, take an X-ray to go into further examination. X-rays are oftentimes avoided because of the cost. * * *

"*Q.* Assuming that the doctor paused in extracting the tooth and had taken the X-ray, and assuming that the—I will change that—let us assume, doctor, that the tooth was extracted and that the patient's jaw was broken. Now if the usual and ordinary practice had been followed, as you have described it, and an X-ray had been taken, do you believe that the fracture of the plaintiff's jaw might not have occurred? * * *

"*A.* I answer that by saying it depends entirely upon the skill of the operator and the judgment he would use from that point on; the experience he has had; and the equipment he has to go on further with the operation.

"*Q.* Do you believe, doctor, it might have been avoided?

"*A.* It might have been avoided, yes, because he could more intelligently see what field and know what to do. Perhaps he wouldn't have done all he did do; I mean, use the same instruments; the same method of procedure."

This did not show negligence in the use of forceps, nor did the expert so claim. The opinion that, had the operator obtained the benefit of an X-ray—"perhaps, he wouldn't have done all he did do; I mean, use the same instruments; the same method of procedure," was but conjectural as to whether an X-ray would have dictated a different method than the one employed.

Adjudged malpractice must rest upon negligence in commission or omission and, when charged upon omission, it must be made to appear that the negligence was the proximate cause of the injury.

The dental establishment of defendant Adams had an X-ray apparatus available for use by the operator in case of need, but it was not employed in the instance at bar, because, by view and manipulation of the tooth, the operator claims he was aware of the full situation, and that the forceps would fully meet the purpose.

Under the testimony of the operator he extracted the tooth with the knowledge an X-ray picture would have afforded.

There is no showing that the X-ray would have commanded a different method of operation and, therefore, the charge of malpractice resulting in fracturing the jaw was one of mere conjecture.

The damages awarded for malpractice in extracting the tooth and for post-operative negligence were in one sum, and cannot now be separated. There was evidence of post-operative malpractice.

Under the evidence plaintiff made no case warranting the jury in finding defendants guilty of malpractice in extracting the tooth and the court, on that ground, should have granted a new trial.

The judgment is reversed and a new trial granted, with costs to defendants.

FEAD, C. J., and NORTH, BUTZEL, BUSHNELL, SHARPE, POTTER, and CHANDLER, JJ., concurred.