FRED ZETTLER, Appellant, *v.* ANDREW J. M. REICH, Respondent.

First Department, April 6, 1939.

*George J. McDonnell* of counsel [*Charles A. Lebett* with him on the brief; *Wise, Shepard, Houghton & Lebett,* attorneys], for the appellant.

*Leo Fixler* of counsel [*Edward J. Pacelli* with him on the brief; *William J. McArthur,* attorney], for the respondent.

COHN, J. On November 21, 1935, plaintiff visited the office of defendant, a dentist, for the purpose of having some teeth filled. At that time he informed defendant that X-rays showed an impacted tooth in his lower left jaw. This tooth defendant advised him to have removed and directed plaintiff to bring the X-ray plates for inspection. Four days later plaintiff returned to defendant's office with the X-rays and defendant thereupon extracted a capped tooth which was directly in front of the impacted tooth, and then proceeded to cut away the gum. His nurse then applied a hammer and a chisel and after she had tapped with the mallet for some time the doctor seized the mallet and struck it with such force that it broke plaintiff's jaw. Plaintiff related the incident as follows: " I immediately told him that he had broken my jaw. He asked me not to interrupt him, and he proceeded to hammer until he got this impacted tooth out. After he had removed it he asked me to bring my teeth together for him, which I did. He said, ' Well, I did break your jaw, I guess I hit you a little too hard.' "

Thereupon defendant had another dentist treat plaintiff's jaw. It was wired and the jaw was rendered immobile for approximately six weeks during which time plaintiff was unable to eat solid food and suffered considerable pain and discomfort.

The foregoing is the substance of the evidence adduced by plaintiff on the trial of the action brought by him to recover damages for the injuries suffered as a consequence of the defendant's malpractice. Plaintiff was the only witness who testified. At the close of plaintiff's case the court dismissed the complaint.

The question presented is whether plaintiff in the absence of expert medical testimony established a *prima facie* case of lack of ordinary care on the part of defendant.

As a general rule, where the exercise of proper skill or care on the part of a physician, surgeon or dentist is in issue, expert medical

testimony is required by plaintiff to show that the untoward results might have been avoided by due care (*Robbins* v. *Nathan*, 189 App. Div. 827, 830; *Brown* v. *Goffe*, 140 id. 353, 356), for under the law the doctor does not guarantee the result. (*Pike* v. *Honsinger*, 155 N. Y. 201.) However, expert evidence is not required where the results of the treatment are of such a character as to warrant the inference of want of care from the testimony of laymen or in the light of the knowledge and experience of the jurors themselves. (*Benson* v. *Dean*, 232 N. Y. 52, 56; *Dictz* v. *Aronson*, 244 App. Div. 746; *Pelky* v. *Kivlin*, 199 id. 114; *Evans* v. *Roberts*, 172 Iowa, 653; 154 N. W. 923; *Vergeldt* v. *Hartzell*, 1 F. [2d] 633; *Eichholz* v. *Poe*, [Mo.] 217 S. W. 282.)

In *Benson* v. *Dean* (*supra*, at pp. 57, 58) the court said: " The evidence of the first operation coupled with the presence of the broken needle in the abscess standing by itself might have suggested that proper care had not been taken and might have been enough to put defendant to his proof. (*Goldstein* v. *Pullman Co.*, 220 N. Y. 549, 554.) Common sense suggests that the condition discovered by Dr. Saphir was incompatible with successful surgery and medical treatment. * * * The rule *res ipsa loquitur* put upon the defendant the burden of going on with the case. (*Davis* v. *Kerr*, 239 Penn. St. 351.)"

In *Dictz* v. *Aronson* (*supra*) the court said: " Proof of injuries resulting from the operation, if there be such proof, taken together with the proved admission by the defendant that ' I cut it [tonsil] just a little too far ' and all the other proofs and circumstances in the case, constitutes, in our opinion, a *prima facie* case."

The pertinent rule is well stated in the case of *Evans* v. *Roberts* (*supra*, at pp. 658, 659, 660), where the court said: " This is not the ordinary case where a practitioner is sought to be charged with liability for alleged improper treatment of some bodily ailment or infirmity. He was employed to remove the adenoids from the plaintiff's throat, and there is neither claim nor proof that he did not successfully remove them. His negligence, if any, was in failing to take due care to avoid injury to the undiseased parts in the vicinity of which the operation was performed; * * *. It is a matter of common knowledge and observation that such things do not ordinarily attend the service of one possessing ordinary skill and experience in the delicate work of surgery. It does not need scientific knowledge or training to understand that, ordinarily speaking, such results are unnecessary and are not to be anticipated, if reasonable care be exercised by the operator. When they do happen, then proof of other facts and circumstances having any fair tendency to sustain the charge of negligence will be sufficient

to take the question to the jury, * * *. The jury here did not have to consider whether the method of the defendant in removing the adenoids was correct or scientific, but whether the unintentional wounding of plaintiff's tongue was occasioned by lack of reasonable care on his part. This, it would seem very clear, involves no question of science or necessarily of expert knowledge."

The proof by plaintiff here that he engaged defendant to extract a tooth and that when defendant's treatment had ended he found himself with a fractured jaw, taken in conjunction with defendant's observation that he had caused the untoward result by striking the chisel with the mallet " too hard," established a *prima facie* case. The consequence of defendant's treatment was of such a character as to justify the conclusion that it was due to want of reasonable care. It does not require surgical knowledge or skill to apprehend that such a result would not ordinarily occur if reasonable care had been exercised by the operator.

What explanation, if any, defendant may have had for breaking plaintiff's jaw in extracting the tooth, is a matter of defense to be developed upon the trial. In the absence of proof that this unanticipated result might have happened even though proper care and skill had been exercised, the court should not have dismissed the complaint.

The judgment should be reversed and a new trial granted, with costs to appellant to abide the event.

UNTERMYER, J., concurs; MARTIN, P. J., concurs in the result, upon the ground that the facts proved at the time the plaintiff rested established a *prima facie* case. The judgment dismissing the complaint should be reversed and a new trial granted. DORE and CALLAHAN, JJ., dissent.

CALLAHAN, J. (dissenting). I dissent. There is no claim in this case that the use of a dentist's mallet and chisel was a departure from an approved method generally in use in extracting an impacted tooth. Nor is there any evidence that the dentist struck such an exceptionally hard blow that any reasonable person would have anticipated that some dire result must follow. The substance of the proof on the subject of the force used is that the nurse had been tapping the chisel with the mallet and that defendant took hold of the mallet and struck " with force," " a great deal harder " than the nurse. Assuming that the method was proper, the force to be applied in hammering was a matter of the dentist's judgment, and, in the absence of some proof of extreme force or some expert proof that the force applied in the present case was such that a reasonably prudent dentist exercising adequate professional skill

should have anticipated an untoward result because of the nature of the blow struck, the plaintiff failed to establish a *prima facie* case. (*Robbins* v. *Nathan*, 189 App. Div. 827.) In other jurisdictions the rule of *res ipsa loquitur* has been held not to apply and the courts have said that there was no presumption of negligence from a resulting fracture of a part of the jawbone in extracting an impacted tooth. (*Donoho* v. *Rawleigh*, 230 Ky. 11; 18 S. W. [2d] 311; *Blodgett* v. *Nevins*, 189 Ill. App. 544.) This case is readily distinguishable from those where foreign substances are left in operative wounds and those where the surgeon's knife has been carelessly permitted to injure undiseased tissue not in the immediate field of the operation. Here, so far as the evidence disclosed, the dentist applied the chisel at the proper point, but erred in his judgment as to how hard a blow he might apply with the mallet. No presumption of negligence should arise from an error in judgment, or solely on the basis of an unfortunate result. (*Pike* v. *Honsinger*, 155 N. Y. 201; *Stone* v. *Goodman*, 241 App. Div. 290.) Defendant's statement, that he guessed he had hit too hard, did not show anything more than that defendant had misjudged the amount of force that should have been applied.

The judgment should be affirmed.

DORE, J., concurs.

Judgment reversed and a new trial ordered, with costs to the appellant to abide the event.