STEPHEN R. CONNELLY *vs.* EUGENE D. EBY.

Berkshire.    April 9, 1947. — June 5, 1947.

Present: FIELD, C.J., QUA, DOLAN, RONAN, & WILKINS, JJ.

*Negligence,* Motor vehicle.   *Law of the Road.*

Section 2 of G. L. (Ter. Ed.) c. 89 did not require the operator of an automobile to pass from the rear to the left of a truck stopped in a highway for municipal work, where the clearance to the left of the truck was not such that the operator of the automobile could drive a "safe distance to the left," and the truck was not wilfully obstructing the highway.

Evidence that a municipal truck, being used for the clearing of a ditch at the side of a public way, stopped five feet from the left side of the highway and nine feet from the right side, and that, as the operator opened the left front door about five inches, an automobile six feet wide with a windshield obscured by mist approached the truck from the rear and attempted to pass it on its left, collided with the open door and so jarred the truck that an employee on its right side was injured, warranted findings that the employee's injuries were caused by negligence of the operator of the automobile.

TORT.   Writ in the Superior Court dated November 17, 1944.

The case was tried before *Burns,* J.

*J. T. Bartlett,* for the defendant.

*J. F. Scannell,* for the plaintiff.

DOLAN, J.   This action of tort is brought to recover compensation for personal injuries sustained by the plaintiff as a result of the alleged negligence of the defendant.   At the close of the evidence the defendant moved for a directed verdict in his favor.   His motion was denied and he duly excepted.   The jury returned a verdict for the plaintiff. The case comes before us on the defendant's exception to the denial of his motion for a directed verdict.

The jury could have found the following facts: On December 9, 1943, the plaintiff, who was employed by the city of Pittsfield, was proceeding in a small truck six feet wide with other fellow employees to William Street to open

"packed ditches" in order to let out water which had collected in the street. They "went up Holmes Road and went east on William Street to the job where the ditches" were. One Gilligan was driving the truck. The plaintiff and another employee, one Daly, were riding with Gilligan on the seat of the truck. Two other employees, Tuchewicz and Tyler, were riding in the back of the truck. Gilligan stopped the truck about five hundred feet from Holmes Road, north of the center line of William Street. That was where the puddle of water was. William Street is a public way. It is gravelled and treated with oil, and looks like a macadam road. The width of the treated road is about nineteen feet. Its width including gravel shoulders averages twenty-one feet. Each side of the travelled way consists of fields of hay and grass. There are no buildings along William Street as it runs from Holmes Road, and no other obstructions. The view in the area is entirely clear. After the truck was stopped the clearance on the left hand side, that is, in the travelled way, was about five feet. In his brief the defendant, whose automobile was six feet wide, concedes that that was the clearance on that side of the truck. There was about nine feet of the travelled way between the right hand side of the truck and the south side of the way. There was no traffic on the right hand side of the way. Having stopped the truck, Gilligan let the plaintiff, Daly and Tyler out. Tuchewicz remained in the back of the truck. The plaintiff went to the right hand side of the truck and was getting tools out there. About two or three minutes after the truck had been stopped, Gilligan, starting to get out, opened the left hand door, "say about five inches," and the automobile owned and operated by the defendant "came along" from the rear and collided with the truck, smashing the door, and the handle of the right hand door of the defendant's vehicle was broken off. There was a "violent crack . . . and some clatter." The plaintiff at that time was reaching into the back of the truck to pull out a pickaxe. He just got the handle of the "pick up" and was going to take it out and then "something happened." The handle of the pickaxe struck him in the shoulder. "Everything

went kind of blue and sparkly like and . . . [he] went down on one knee." When the collision occurred the plaintiff was standing "up against the truck," the shoe and overshoe on his left foot were torn by the tire of the truck, and the running board of the truck struck the shin of his right leg. At that time one of the wheels of the defendant's automobile was "up on the grass plot, off the gutter." After the collision the defendant's automobile proceeded for about fifty feet. It "was going on the grass" until it swung back to the right to the travelled way. Having stopped his vehicle, the defendant alighted, went over to the truck, and said, "I am sorry, I think there was some mist on the windshield." In response to a reproach by Tuchewicz the defendant said, "I never see — that fog." The defendant testified that when he had turned into William Street from Holmes Road the truck was already stopped, that the day was clear, that his impression was that there were two or three workmen on the south (the right) side of the highway, that he saw them as he approached, that he was paying attention to his driving rather than to details concerning the number of men in the truck or on the way, that in passing he had to estimate where the side of the truck was and where the side of his vehicle was, and that he "may have made some remark to the effect that there was condensation on . . . [his] windshield and it might have affected . . . [his] judgment on the clearance." There was also evidence that as the defendant's automobile approached the truck it "acted as though it was going on the right side [and] then turned over and went on the left side."

In reliance upon G. L. (Ter. Ed.) c. 89, § 2, as appearing in St. 1933, c. 301, the defendant argues that under its provisions it was his duty to pass to the left of the truck and that he was not required to anticipate that, as he was about to pass, the door of the truck on that side would be opened. That proposition of the defendant cannot be supported properly on the evidence. It is true that the statute just cited does provide that "The driver of a vehicle passing another vehicle traveling in the same direction shall drive a safe distance to the left of such other vehicle;

and, if the way is of sufficient width for the two vehicles to pass, the driver of the leading one shall not unnecessarily obstruct the other." In the instant case, however, the truck could not rightly have been found to have been wilfully obstructing the highway. The jury could have found that it stopped properly just "before the puddle" of water for the proper conduct of the work in clearing the way of the water. They could also have found that the clearance to the left of the truck was not such that the defendant could drive a "safe distance to the left" of the truck, and this without reference to whether the door of the truck was open for "five inches." In support of that finding the jury could have found that the plaintiff was standing up against the truck when the collision occurred and he was injured; that one of the left wheels of the defendant's automobile was off the travelled way when it collided with the truck; that the width of the defendant's automobile was six feet and the clearance when he attempted to pass the truck to the left was but five feet; that, notwithstanding that the defendant saw the truck and the workmen in the way from a distance of four or five hundred feet, and that on his own admission (see *Woronka* v. *Sewall*, 320 Mass. 362, 365–366, and cases cited) his vision was obscured by mist on the windshield of his vehicle, he negligently failed to stop (see *Campbell* v. *Cairns*, 302 Mass. 584, 586, and cases cited; *Levin* v. *Twin Tanners, Inc.* 318 Mass. 13, 16–17); and that he misjudged the clearance on the left of the truck and collided with the truck up against which the plaintiff was standing. In the circumstances disclosed by the evidence, c. 89, § 2, cannot avail the defendant.

On all the evidence the jury were warranted in finding that the plaintiff's injuries were caused by the defendant's negligence. It follows that the defendant's motion for a directed verdict in his favor was denied rightly.

*Exceptions overruled.*