## AMBROSI v. MONKS.
### No. 1106.

Municipal Court of Appeals for the District of Columbia.

Argued Nov. 13, 1951.

Decided Dec. 14, 1951.

Sol M. Alpher, Washington, D. C., Louis E. Spiegler, Washington, D. C., on the brief, for appellant.

J. Harry Welch, Washington, D. C., H. Mason Welch and John R. Daily, Washington, D. C., on the brief, for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

HOOD, Associate Judge.

Mrs. Ambrosi, who is appellant here, sued Dr. Monks, a dental surgeon, for malpractice. Her testimony showed that she was referred by her dentist, Dr. Norton, to Dr. Monks for the extraction of a lower molar. Dr. Monks took an X-ray of the tooth, administered a local anesthetic, and extracted the tooth. Mrs. Ambrosi testified that immediately with the pull she felt a terrible blow or jerk followed by agonizing pain which caused her to scream. Dr. Monks protested, telling her, "it can't hurt you." She was told to return the following day. The pain continued and she was unable to eat any solid food. When she returned the following day she was still in pain. Dr. Monks removed a wad of cotton he had left in her mouth, sprayed her mouth and

told her to see her own dentist as soon as possible. She saw Dr. Norton two days later. Dr. Norton testified that when he saw her she was complaining of pain and a loose tooth, that the tooth was so sore he could not examine it very well, that he put something on the opposite side of the mouth to keep her from closing her jaws and hitting the sore tooth. A day or two later Dr. Norton took an X-ray of the sore tooth, which was adjacent to the one which had been extracted. The X-ray disclosed that the sore tooth had been completely separated from the root and was attached only to the gum. Dr. Norton then removed the loose tooth leaving the root in the gum. Examination revealed that it was a dead tooth with a large silver filling. Dr. Monks, called as a witness for Mrs. Ambrosi, admitted that before the extraction he took an X-ray of the tooth to be extracted and the adjacent tooth and that the X-ray showed no fracture of the adjacent tooth.

The theory of Mrs. Ambrosi's claim was that in the course of the extraction Dr. Monks through negligence fractured the adjacent tooth. At the close of her evidence the trial court directed a verdict for Dr. Monks.[1] The correctness of that ruling is challenged on this appeal.

To sustain her claim it was necessary for Mrs. Ambrosi to offer evidence from which the jury could find (1) that some act of Dr. Monks caused the fracture of the tooth, and (2) that such act was a negligent one.

■ With respect to the cause of the injury we think there was sufficient evidence for the jury to find that the injury was caused by some act of Dr. Monks in extracting the adjacent tooth. He conceded that no fracture showed up in the X-ray made prior to the extraction. From that time until about a week later when Dr. Norton's X-ray disclosed the fracture, Mrs. Ambrosi had eaten no solid food

and had done nothing likely to result in a fracture of the tooth. Because of its soreness she had been particularly careful of it. And because of such soreness Dr. Norton's first examination of it was very superficial. His only treatment of her was to prevent the sore tooth from coming into contact with anything else. Nothing in his treatment would give rise to a probability that his treatment caused the fracture. The extreme pain suffered by Mrs. Ambrosi at the time of the extraction (when Dr. Monks said she should feel no pain), which continued until the broken tooth was discovered and removed by Dr. Norton, warrants an inference that the fracture occurred while the adjacent tooth was being extracted. "The law is not so exacting that it requires proof of negligence or causation by testimony so clear that it excludes every other speculative theory." Christie v. Callahan, 75 U.S. App.D.C. 133, 148, 124 F.2d 825, 840.

■ The question whether the act of Dr. Monks, whatever it was, which caused the fracture was a negligent act is a more difficult one. There was no expert testimony. It is the law here, and generally elsewhere, that in malpractice cases the question of "the merits of a diagnosis and scientific treatment" cannot be determined by a jury without the aid of expert testimony. Rodgers v. Lawson, 83 U.S.App. D.C. 281, 285, 170 F.2d 157, 160, 161. This rule is especially applicable in highly specialized subjects such as cancer, "as to which laymen have no knowledge and as to which both court and jury must depend on expert evidence." Kasmer v. Sternal, 83 U.S.App.D.C. 50, 52, 165 F.2d 624, 626.

■ However, there are exceptions to the rule that expert testimony is necessary in malpractice cases. In Christie v. Callahan, 75 U.S.App.D.C. 133, 136, 124 F.2d 825, 828, it was said: "Generally the standard must be shown by experts and

1. The record shows that the trial court reserved its ruling on the motion made at the close of plaintiff's case, that defendant's testimony was heard, and then the court acted on the motion, disregarding all defendant's evidence. The record does not include defendant's evidence and, as indicated in the opinion, we treat the case as one of a directed verdict at the close of plaintiff's evidence.

so must the departure from it. But there are cases in which the result of medical or surgical treatment, considered in the light of the circumstances attending and following it, may warrant an inference of negligence." In Sweeney v. Erving, 35 App.D.C. 57, 62, 43 L.R.A.,N.S., 734, affirmed, 228 U.S. 233, 33 S.Ct. 416, 57 L. Ed. 815, it was said: "There are exceptional cases where the result of an operation performed, if unexplained, may warrant an inference of negligence." In Grubb v. Groover, 62 App.D.C. 305, 306, 67 F.2d 511, 512, certiorari denied, 291 U.S. 660, 54 S.Ct. 377, 78 L.Ed. 1052, it was said: "In our opinion, evidence that an X-ray practitioner administered X-ray treatment to a patient without remaining in the room or within hearing, which treatment resulted in a burn, as here, warrants a finding of negligence, unless satisfactorily explained."

In the present case we are not dealing with a question of diagnosis or scientific treatment or the unfortunate result of an operation. So far as the extraction is concerned, there is no complaint that the tooth should not have been extracted or that the extraction, as concerns the tooth extracted, was improperly done. The complaint here is that in successfully extracting one tooth an adjacent tooth was negligently injured.

■ Although plaintiff's evidence "should not be so thin that it would be dangerous for the jury to consider it",[2] it is not necessary that her evidence conclusively establish defendant's negligence. "As in other civil cases, a balance of prob-

ability is enough." Washington Loan & Trust Co. v. Hickey, 78 U.S.App.D.C. 59, 61, 137 F.2d 677, 679. In Woronka v. Sewall, 320 Mass. 362, 69 N.E.2d 581, 582, a malpractice case, it was said: "The plaintiff was not required to show the exact cause of her injuries or to exclude all possibility that they resulted without fault on the part of the defendant. It was enough if she showed that the harm which befell her was more likely due to negligence of the defendant than to some other cause for which he was not liable."

■■ We think it can be said as a matter of common knowledge that the extraction of a tooth, done in a reasonably careful manner, will not ordinarily result in the fracture of an adjacent tooth. And we think this unusual or out of the ordinary result called for an explanation by Dr. Monks and that in the absence of such explanation it was error to direct a verdict in his favor.[3]

We do not wish to be understood as holding that the inference of negligence which could be drawn from plaintiff's evidence may not be overcome, either factually or legally, by defendant's testimony. It may be that expert testimony will show that due to the position of the extracted tooth and the condition of the adjacent tooth, as well as other factors, that the fracture occurred without negligence on the part of defendant.[4] All we hold is that plaintiff's evidence called for some answering evidence from defendant.

Reversed with instructions to grant a new trial.

2. Christie v. Callahan, 75 U.S.App.D.C. 133, 135, 124 F.2d 825, 827.

3. Zettler v. Reich, 256 App.Div. 631, 11 N.Y.S.2d 85, affirmed, 281 N.Y. 729, 23 N.E.2d 548; Vergeldt v. Hartzell, 8 Cir., 1 F.2d 633; Jefferson v. United States, D.C.Md., 77 F.Supp. 706, affirmed on other grounds, 4 Cir., 178 F.2d 518, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152.

4. See Donoho v. Rawleigh, 230 Ky. 11, 18 S.W.2d 311, 69 A.L.R. 1135; Dunbar v. Adams, 283 Mich. 48, 276 N.W. 895; Lindloff v. Ross, 208 Wis. 482, 243 N.W. 403; Eichholz v. Poe, Mo., 217 S.W. 282.