**Evelyn G. STAPLES, Appellant,**

v.

**Walter L. WASHINGTON, Appellee.**

No. 1840.

Municipal Court of Appeals for the District of Columbia.

Argued Aug. 6, 1956.

Decided Sept. 14, 1956.

Dovey J. Roundtree, Washington, D. C., for appellant. Julius W. Robertson, Washington, D. C., also entered an appearance for appellant.

J. Joseph Barse, Washington, D. C., with whom H. Mason Welch and J. Harry Welch, Washington, D. C., were on the brief, for appellee.

Before ROVER, Chief Judge, HOOD, Associate Judge, and CAYTON (Chief Judge, Retired), sitting by designation under Code, § 11–776(b).

ROVER, Chief Judge.

This was a non-jury action against the appellee, a dentist, for damages alleged to be attributable to malpractice. Appellant charged that the dentist was negligent in the extraction of her lower left wisdom tooth and also in his standard of treatment both before and after the extraction. Conflicts in testimony obscure much of the true factual picture, but the fact was undisputed that only a partial removal of the tooth from its socket was achieved, one root remaining, which subsequently caused a rather severe foreign body reaction to set in. After a full trial, the court made a finding that "based on all the credible evidence", the appellee had "performed his work in a creditable and correct manner" and entered judgment for defendant.

On appeal, the principal error assigned is that the finding is "contrary to the weight of the credible evidence" in that appellant had established appellee's negligence by a clear preponderance of the evidence. Appellee's position is that the court made the only possible finding since there was no expert testimony that the techniques he employed throughout did not meet the approved and accepted standards of practice of other dentists in this locality.

Appellant, in regard to the pre-extraction phase, claims it was negligence to attempt it without first taking an X-ray. Appellee testified that after he took his patient's history and made a preliminary examination, he had advised her that an X-ray should be taken but that she had replied that she could not afford it, to which he answered that he would do his best without one.

In regard to the extraction itself, the following was appellee's testimony. Almost half the crown portion of the appellant's tooth was already missing due to decay and the cavity was deep, exposing the nerve. After two injections of a local anesthetic the area was still painful so that he gave her a third. He then attempted to make the extraction but the crown portion broke because of the decay, not being strong enough to maintain the pressure needed to extract the roots. By probing and elevating, one root was removed, after which the patient was in such pain that he anesthetized again. Then, after taking an X-ray to ascertain the direction of the remaining root, he attempted its elevation. Appellant again complained of pain so he injected anesthesia for the fifth time. When his patient still complained of pain, he told her he did not want to give her any more anesthesia because it would have a tendency to constrict the blood vessels on that side of her face, thus retarding the normal flow of blood and causing severe post-operative pain. He showed her the root in the X-ray picture and told her the gum was too sore to make a further attempt to remove it at that time and that it was inadvisable to inject any more anesthesia then. Against this testimony is appellant's that the dentist did not advise her that a portion of her tooth, the root, had been left in her gum.

Respecting the post-operative treatment given, appellee testified that he packed the socket with cotton holding medicines designed to relieve pain and used in "dry socket" cases, telling the patient to keep it packed in this manner with the medicines which he prescribed. He gave her two tablets to take and instructions on the care of her mouth following the extraction and told her to come back to his office later. She came back in a few days and said her gum was still sore but felt better after he had repacked the socket. He advised her to keep up the treatment as he had done and to come back again. On her next visit she said she felt better. He told her the root was still in her gum and that as soon as the soreness had subsided he would

again attempt to remove it. His final testimony was that the treatment he gave appellant was the type of treatment that accorded with accepted standards of practice of other dentists in this locality.

The appellant testified that she thereafter consulted another dentist whom she visited a total of four times; that he extracted "something" from her gum and that the pains then cleared up.

The second dentist was called as a witness by appellant and testified that she came to his office and complained of considerable pain in her jaw and that he took an X-ray which revealed a root of a tooth in her gum which he extracted and that she came back to his office several times and was finally discharged because the condition had cleared up. He had diagnosed the cause of her pain as a foreign body reaction. He testified that the X-ray he made indicated prior surgery in the gum about a week or ten days before and that "many times in extracting teeth they fracture."

Appellant argues that the dry socket treatment was incorrect but there is no evidence of any sort in support of this position. The closest approach to an expert opinion to support appellant's version was the second dentist's testimony, having been recalled as a witness for the appellant, when asked:

"Q. In your opinion, Doctor, in your years of practice, is it generally the practice among dentists here to leave a root in the gum for some one week's period after the extraction?

* * * * * *

"A. Well, depending upon the condition. I don't know what condition existed in his office. I only know what happened in my office * * * when I saw her."

It is well established in this jurisdiction that in malpractice cases the complaining party has the burden of proving that the professional man was negligent and that to prove such negligence it must be shown that the practice followed "did not accord with the standard of members of his profession in the same locality."[1] In that case a physician had allowed a broken needle to remain in the side of a patient for over six weeks but there was no proof that it was negligent to do so. The court observed that the plaintiff had called two doctors but that: "Neither was asked whether the treatment given by defendant was contrary to accepted practice among physicians in the District, or even whether he considered the treatment negligent."[2]

In our case, when the dentist who extracted the remaining root was called as a witness for the appellant, he was not asked to comment on the standard of practice of appellant before the extraction. About the extraction proper, his only testimony was that teeth will many times fracture on extraction. When recalled to the stand, he was asked in regard to the postoperative aspects of this case whether it is "generally the practice among dentists here to leave a root in the gum for some one week's period after the extraction". He answered that it depended upon the "condition"; that he did not know what condition existed in appellee's office, he only knew what happened in his office when he saw the appellant.

The record discloses that though he was present in the courtroom during the entire examination of the appellee, his testimony was in no way critical of the appellee as a practitioner or of the dental procedures employed by the latter when he was recalled as a witness by appellant.

Appellant points out as an act of negligence that the appellee did not advise

1. Hohenthal v. Smith, 72 App.D.C. 343, 114 F.2d 494, 497.

2. Ibid.

her he had left a portion of the root in the gum; he flatly contradicts this and testified that he did so advise her; the court was at liberty to accept appellee's version.

Appellant relies upon our decision in Ambrosi v. Monks.[3] In that case the trial court had directed a verdict for the defendant at the close of the plaintiff's evidence and we said, "* * * there are exceptions to the rule that expert testimony is necessary in malpractice cases." In the Ambrosi case a dentist in extracting a tooth had fractured an adjacent tooth and Judge Hood, speaking for this court, said:

"We think it can be said as a matter of common knowledge that the extraction of a tooth, done in a reasonably careful manner, will not ordinarily result in the fracture of an adjacent tooth. * * *

"We do not wish to be understood as holding that the inference of negligence which could be drawn from plaintiff's evidence may not be overcome, either factually or legally, by defendant's testimony. It may be that expert testimony will show that due to the position of the extracted tooth and the condition of the adjacent tooth, as well as other factors, that the fracture occurred without negligence on the part of defendant. *All we hold is that plaintiff's evidence called for some answering evidence from defendant."* (Emphasis supplied.)

Here the court's decision was at the conclusion of the evidence offered by both parties. There was a complete absence of expert testimony and we do not feel that the mere fact that a portion of the root was left in the gum, under the circumstances as explained by the appellee, of itself warrants an inference of negligence. Since there was substantial evidence to support the judgment of the trial court, it must be affirmed.

Affirmed.

3. D.C.Mun.App., 85 A.2d 188, 189.