KATHLEEN COLLINS & another *vs.* JOEL J. BARON. June 10, 1983. *Negligence,* Medical malpractice. *Evidence,* Admissions, Failure to produce witness.

The plaintiff brought an action against the defendant doctor, alleging that he negligently injured her during surgery. Her husband also sought damages for loss of consortium. The jury found for the defendant, and the plaintiffs appeal, claiming error in the trial judge's instructions to the jury. We affirm.

The following facts were put to the jury. During a medical examination of the plaintiff, the defendant discovered that she had a condition which could lead to cancer, and he recommended that she undergo a vaginal hysterectomy. He discussed the medical procedure with her and advised her that over the weekend immediately following her operation she would be attended to by his medical associate.

In the course of the operation, the plaintiff's ureter was damaged, and over the weekend, while being tended to by the defendant's associate, her abdomen became distended, and she experienced lower back and rectal pain. The defendant saw the plaintiff on the third day after the operation, and he soon thereafter transferred her to the New England Medical Center Hospital for treatment of her injury.

The plaintiff testified that in explaining her postsurgical condition to her, the defendant said: "'I'm going to transfer you to a hospital in Boston . . . I made a mistake during the hysterectomy. I severed your ureter. Its all my fault. I'm very sorry this happened. I'm going to send you to a fine hospital for corrective surgery.'" The plaintiff's husband testified that he was present during this conversation, and he supported the plaintiff's testimony.

The plaintiff's medical expert testified that, in his opinion, the plaintiff's ureter was cut during the operation, that the defendant's use of a clamp was not good medical practice, and that had the defendant rendered proper postoperative care and had an intravenous pyelogram been done sooner than it was, the defendant would have known that something was wrong.

The defendant related that the plaintiff's ureter "was damaged in association with a vaginal hysterectomy. I can't tell you just when and how it happened." He denied the plaintiff's version of his postsurgical conversation with her and testified that he advised her that her ureter had been injured, that the injury had occurred during the hysterectomy, that he "regretted that she sustained this complication of surgery," and that she was to be transferred to another hospital for "definitive treatment of this injury."

The defendant's medical expert, who had been performing hysterectomies for over twenty-five years and who had examined the plaintiff

at the New England Medical Center Hospital, testified that it is routine for physicians who practice in conjunction with each other to make "rounds" on one another's patients. He further stated that there is a certain incidence of this type of injury with hysterectomies even when done by "the most skillful hands and in the most careful way." The defendant's expert also testified that he knew that the defendant had used a clamp during the surgery but that it was his opinion that although the injury occurred during the surgery, the plaintiff's ureter had not been cut; rather, the damage was the result of an obstruction which he detected when he examined the plaintiff. He stated that the plaintiff's condition could not have been discovered by an earlier intravenous pyelogram because it takes three or four days for an injury such as the plaintiff's to develop to the point that it can be detected by such a procedure. In the opinion of the defendant's medical expert, the surgery performed on and the postoperative care of the plaintiff by the defendant was in accordance with accepted standards of care for an obstetrician gynecologist in 1976, the time of the surgery.

1. The plaintiffs argue that the trial judge erred in refusing to instruct the jury that "[a] statement by the defendant to the plaintiff and her husband that he had cut her ureter, that it was his fault, that he had made a mistake, and that he was sending her to a fine hospital in order that the damage be remedied, if believed by the jury . . . is an admission, which is to be considered by the jury in arriving at its verdict." See *Woronka* v. *Sewall*, 320 Mass. 362, 366 (1946). The trial judge stated that he would not do so because "I try very hard to avoid comments on specific evidence. If I am going to do that, single out a portion of the evidence, I will draw greater attention to that portion of the evidence." (a) It is within the trial judge's discretion whether to state the testimony, *Pfeiffer* v. *Salas*, 360 Mass. 93, 99 (1971), and where, as here, there are contradictory versions of the statements, we cannot say that the trial judge abused his discretion in refusing to give the instruction as requested. (b) The trial judge not only refused the plaintiffs' requested instruction, he gave no instruction concerning admissions. "The plaintiffs were entitled to have the judge instruct the jury that if they found that the defendant made the statements attributed to him by the plaintiff and her [husband], they were then permitted, though not required, to find further that such statements constituted admissions." *Id.* at 101. Assuming without deciding that the trial judge should have given the jury a specific instruction on the topic of admissions, we see no prejudice resulting to the plaintiffs from his failure to do so. Compare *Pfeiffer* v. *Salas*, 360 Mass. at 100, where the trial judge undertook to give such an instruction and charged the jury that "it is for you to determine, that the statement does not, as a matter of law, constitute an admission of fault" (emphasis omitted). We are of the opinion that from the very nature of the plaintiff's version of the statements and the defendant's contradiction thereof, from the closing arguments of

counsel, and from the trial judge's standard and correct instructions on the issues of credibility and negligence, the jury appreciated and understood that they were to determine which of the statements was in fact made and their significance.

2. We see no abuse of discretion in the trial judge's refusal to instruct the jury to the effect that they could draw an inference adverse to the defendant from his failure to call his medical associate to testify. See *Commonwealth* v. *O'Rourke*, 311 Mass. 213, 222 (1942) ("Whether an inference can be drawn from the failure to call witnesses necessarily depends, as with inferences generally, upon the posture of the particular case and the state of the evidence"); *Grady* v. *Collins Transp. Co.*, 341 Mass. 502, 506 (1960) ("[T]he trial judge may allow the inference to be drawn if the evidence shows the probable availability to the party of the absent witnesses, the circumstances emphatically call for their presence if his testimony is to be believed, and no explanation has been offered of their absence"). Moreover, we note that the plaintiffs' counsel argued without objection in his summation to the jury: "Where is he? Why isn't he here? I ask you to infer that their decision not to bring him in here would damage their case and you have a right to draw that inference. He's still associated with them. He's here in this country and he's not here."

3. The plaintiffs make various allegations of error throughout their brief concerning the trial judge's rulings on the admissibility of certain testimony given by the defendant's medical expert. These claims are not accompanied by argument within the meaning of Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975), and we need not consider them. See *Tobin* v. *Commissioner of Banks*, 377 Mass. 909 (1979). We note in passing, however, that our review of the transcript reveals that the medical expert's opinions on the matters to which he testified were supported by his expertise and had a basis in the evidence.

*Judgment affirmed.*

*Daniel H. Kelleher (John J. Mackin* with him) for Kathleen Collins.
*Edward J. Krug (David M. Gould* with him) for the defendant.