J. E. LOGAN, Respondent, v. R. H. FIELD, Appellant.

Kansas City Court of Appeals, May 16, 1898.

1. **Physicians**: SKILL: INSURERS.  At common law a physician, as every professor of a learned profession, undertakes to exercise a reasonably fair and competent degree of skill, but he is not an insurer of a cure.  He is not to be tried by the result of his remedies.

2. ———: ———: NEGLIGENCE.  If a physician, by the exercise of reasonable care and skill ought to discover an ailment is incurable or would not yield to usual treatment and the patient would not be benefited, and fails to make such discovery and advise the patient thereof, he is guilty of negligence.

3. ———: GOOD FAITH TO PATIENT.  A physician should act in the utmost good faith toward his patient; and it is a question for the jury whether he exercises proper care and skill in his treatment and manifests such good faith.

4. ———: MALPRACTICE: RECOVERY FOR SERVICES.  Evidence that will sustain an action against a physician for malpractice will defeat his recovery for services.

5. ———: NEGLIGENCE: RECOVERY: INSTRUCTIONS.  An instruction told the jury that if the patient received no benefit and the result was due to the physician's lack of skill or care or failure to exercise the same, he was entitled to no compensation, is proper.

*Appeal from the Jackson Circuit Court.*—Hon. J. H. Slover, Judge.

Reversed and remanded.

Wash Adams for appellant.

(1) The doctor's implied contract with his patient is that he possesses that degree of judgment and skill that is reasonably necessary to do what he professes to be able to do in his profession and that he will do his best to discover and remove the trouble he undertakes to remedy. If he lacks this degree of judgment and skill, or, possessing it, fails to exercise it with diligence, he is guilty of malpractice and if injury ensue therefrom, he is liable for the damage sustained by the patient, and can of course have no recovery of compensation for his services in such case. McMurdock v. Kimberlain, 23 Mo. App. 523; Patten v. Wiggin, 51 Me. 594; Loan Fund & Sav. Ass'n v. Friedley, 123 Ind. 143; Lewis v. Dwinnell, 84 Me. 497. (2) But less negligence is necessary to defeat all right to compensation than is requisite to sustain an action for injury in malpractice. Nixon v. Phelps, 29 Vt. 198, 204; Loan Fund & Sav. Ass'n v. Friedly, *supra;* Hill v. Featherstoneaugh, 7 Bing. (Eng.) 572. (3) The defendant had a right to a cure, if by the possession and exercise of proper skill, care and diligence on plaintiff's part, this result could have been secured during the period of nine months covering the sixty-four treatments in question. Lewis v. Dwinnell, 84 Me. 497; Graham v. Ganteen, 21 Tex. 111; Moratzky v. Wirth, 69 N. W. Rep. 480 (a case of four weeks treatment); Harriott v. Plimpton, 166 Mass. 586, 588; Allison v. Hayner, 7 Barn. and C. 443 (burden of proof); Reece v. Righy, 4 B. & Ald. (Eng.) 202;

Logan v. Field.

Cochrane v. Little, 71 Md. 323; Kannen v. McMullen, 1 Peak, 59; Von Wollhoffen v. Newcombe, 10 Hun. (17 N. Y. Sup. Ct.) 236; Hopping v. Quinn, 12 Wendell, 517; Armin v. Loomis, 82 Wis. 86; Nixon v. Phelps, 29 Vt. 198; Hinckley v. Krug, 34 Pac. Rep. 118; Weeks on Attorneys, secs. 291, 302, 335. (4) The plaintiff not only owed the defendant skill and diligence but (like members of every other learned profession, serving a patron) he was bound to serve the defendant with frankness and absolute good faith, to entitle him to recover for the service rendered. Heden v. Medical Institute, 62 Min. 146; Hupe v. Phelps, 2 Stark (Eng.) 480; Chase v. Heaney, 70 Ill. 268; Allison v. Rayner, 7. Barn & C. (Eng.) 443; Armin v. Louis, 82 Wis. 86; Cochrane v. Little, 71 Md. 323; Carpenter v. Blake, 60 Barb. (N. Y.) 488; Weeks on Attorneys, secs. 261, 262; Griswold v. Hutchinson, 47 Neb. 727; Lewis v. Dwinnell, 84 Me. 497. Any concealment of his ignorance of the case in hand or of his inability to grapple with it while running a bill for his services is such a fraud on the part of the professional man as to defeat his right to recovery for such service. Chase v. Heaney, 70 Ill. 268; Small v. Howard, 128 Mass. 131; Hupe v. Phelps, 2 Stark (Eng.), 480; Brackett v. Norton, 4 Conn. 524, *et seq.;* Bogie v. Nolan, 96 Mo. 86; U. S. v. Coffin, 83 Fed. Rep. 337; Allison v. Rayner, 7 Barn. & C. (Eng.) 443; Elmose v. Newcombe, 143 Ill. 513; Thomas v. Turner, 87 Va. 1; Ryan v. Long, 35 Minn. 394; Heden v. Institute, 62 Minn. 149.

TEASDALE, DOWNS, INGRAHAM & COWHERD for respondent.

(1) Respondent's instructions presented the law as applicable to the facts in making out his case. Meisenbach v. Cooperage Co., 45 Mo. App. 232.

(2) It is sufficient if the instructions taken and read together are harmonious and consistent, embracing all the material issues involved. Shaw v. Dairy Co., 56 Mo. App. 521, 525. (3) Appellant's refused instruction number 1 was properly refused, and the authorities cited in appellant's brief to sustain his position fail to do so. (4) Appellant's refused instruction number 4 is covered by his instruction number 2 which was given; and appellant's instruction number 7 is also covered by instruction number 2 given in his behalf. Appellant's refused instruction number 5, while it contained some propositions that in the abstract are correct and others that are not, was evidently written to confuse the jury—at least, that would have been its effect. The portion of it that might possibly be distorted into stating a correct proposition as applicable to this case, was also covered by instruction number 2, given in his behalf. Appellant's refused instruction number 6 had no evidence whatever to support it.

SMITH, P. J.—The plaintiff, a practicing physician, who made a specialty of treating diseases of the nose, throat and ear, brought a suit against defendant before a justice of the peace, on an account, to recover $160 for medical services.

It is disclosed by the evidence taken at the trial in the circuit court, where the cause had been removed by appeal, that the defendant, who had been STATEMENT. suffering from nasal catarrh for some ten years, requested treatment by the plaintiff and was, accordingly, treated for some months, and until his bill therefor amounted to $122. Experiencing no benefit from the treatment of his ailment he paid the plaintiff's bill therefor and discontinued the same for something like a year, when finding his

condition in no way improved he again visited the plaintiff, when, as he testified, he said to him: "Doctor, I have come back to you with this nose." He (plaintiff) looked into it and said: "You have a very different nose now from what you had before." I said to him that, "I don't want to run a big bill and if you can not cure me I want you to tell me so. I have no money to throw away but am willing to pay you well if I can be cured." And he said: "I can't tell you now." The defendant was treated by the plaintiff during the next ten months sixty-five times and at each treatment the plaintiff would say to him: "Your nose is getting along beautifully, beautifully."

Defendant further testified that notwithstanding these encouraging assurances he often complained to plaintiff that he was receiving no benefit from his treatment, and that toward the latter end of it the plaintiff said: "I am going to New York and I am going to talk to Dr. Curtis about your case."

It seems that the plaintiff's father was likewise a physician, officing with plaintiff: The former said to defendant, in the presence of plaintiff: "When Jim (plaintiff) goes to New York we will run a free dispensary here. You come over and I will clean out your nose." After plaintiff went to New York his father treated the defendant, but the defendant testifies that the treatment was so painful that he could not stand it, so that he discontinued it. During one of these treatments the plaintiff's father said to defendant: "There is no use of your taking treatment. Jim (plaintiff) has long regarded your case as incurable. And the thing for you to do is to get a kettle of hot water and rubber tube and snuff that until you clear your head out."

Defendant testified further that after the plaintiff had returned from New York he met him on the street when he said: "What is the matter? You haven't

been back for treatment," and to which the defendant replied: "Doctor, I can't afford to take your treatment unless you can cure me." The plaintiff replied: "If you will come back now I can cure you. I can perform an operation in your head. I have had a talk with Dr. Curtis about this, and he says I can cure you." And to this I said: "Doctor, I feel very much discouraged, very much discouraged, and I am going to try taking no treatment for a while." He further testified that the plaintiff, in the same connection, told him that his trouble was not in his nose but up in his forehead.

The plaintiff testified that the treatment which he had adopted in the defendant's case consisted in reducing the inflammation in the nose by the use of sprays and such medications as trichloricetic acid, so as to allow a drainage from above as much as possible, and that there was no better treatment than that; and that this was the best treatment anybody knew; that after his return from New York he had told defendant that he did not think his case would improve unless he went further and submitted to an operation to open up the frontal sinus; that this operation was a *dernier* resort, practiced only in extreme cases; and that such operations were oftentimes successful but that he could not say that it would have cured defendant.

The defendant further testifies that he received no benefit from the plaintiff's treatment and that since he had discontinued it his general health had greatly improved, and that his nasal discharges were not so profuse.

The evidence adduced by the plaintiff was, we think, sufficient to establish a *prima facie* right to recover on a *quantum meruit*.

The plaintiff's instructions submitting the case to the jury are, as far as we can discover, unobjectionable.

The court, by an instruction requested by the defend-
ant, told the jury that if the plaintiff's
treatment was of no benefit to defendant,
and if he knew, or by the possession and exercise of
ordinary judgment and foresight in his profession
could have known, that the same would have been of
no benefit to defendant, then the verdict should be for
defendant, though no guarantee of a cure nor claim of
his ability to cure was made. The court refused two
other instructions requested by defendant which were
to the effect that the defendant had the right to rely on
the superior knowledge of the plaintiff to his own, and
if the plaintiff knew, or by the exercise of ordinary
skill and judgment, could have known, that he could
not cure defendant, or that there was great doubt
whether he could successfully treat defendant's ailment,
or that the treatment would probably be of no sub-
stantial benefit, he ought to have so informed defend-
ant; and even though defendant received treatment
and plaintiff did not guarantee a cure of defendant, yet
if the plaintiff, under such circumstances encouraged,
or suffered defendant to take treatment without in-
forming him that there could be no cure, or that there
was great doubt whether he could be successfully
treated, or whether the treatment would be of substan-
tial benefit, and that the defendant, relying upon the
superior skill of plaintiff, received such treatment in
the hope of a cure but actually received no benefit
therefrom, then the plaintiff ought not to recover.

The question thus presented is whether or not de-
fendant was entitled to a submission of the case upon
the theory outlined by his refused instructions. It is
the doctrine of the common law that every person who
enters into a learned profession undertakes
to bring to the exercise of it a reasonable,
fair and competent degree of skill. Lamp-

*Margin notes: INSTRUCTIONS. / PHYSICIAN: skill: insurers.*

shire v. Phips, 8 C. & P. 475.   A physician is not a
warrantor or insurer of a cure and is not to be tried by
the result of his remedies.   The contract implied by
law from his mere employment is to treat the case with
reasonable diligence and skill.   If more than this is
expected it must be expressly stipulated.   When he
attends for a fee he is liable for such want of ordinary
diligence and skill upon his part as leads to the injury
of his patient.   He is bound not only to use such skill
as he has, but is bound to have a reasonable degree of
skill, for the law will not countenance quackery.
Shearman & Redfield's Negligence [5 Ed.], pp. 1076,
1077, and authorities there cited.   The rule of liability
of physicians for want of professional skill and dili-
gence in practice and for erroneous or negligent advice
to those who employ them is the same as that of attor-
neys.  Savings Ass'n v. Friedley, 123 Ind. 143; Waugh
v. Shunk, 20 Pa. St. 130; Graham v. Gantior, 21 Tex.
111.   The highest degree of fairness and good faith is
required of them.   They must not be guilty of decep-
tion to the detriment of their patients.   Shearman &
Redfield on Negligence, secs. 258, 259; U. S. v. Coffin,
83 Fed. Rep. 337.

It was said in a Minnesota case—Heden v. Institute,
62 Minn. 149—"That a doctor with his skill and ability
should be able to approximate to the truth when giv-
ing his opinion as to what can be done with injuries
of one year's standing and he should always be able to
speak with certainty before he undertakes to assert
positively that a cure can be effected.   If he can not
speak with certainty let him express a doubt.   If he
speaks without any knowledge of the truth or fal-
sity of a statement that he can cure and does not
believe the statement true, or if he has no knowledge of
the truth or falsity of such statement, but represents

it as true of his own knowledge, it is to be inferred that he intended to deceive."

If the plaintiff by the exercise of that degree of care and skill which the law exacts of a physician might and ought to have seasonably discovered that the defendant's ailment was incurable, or that it was a case that would not yield to the usual treatment, or that it was probable that the defendant would not be benefited by such treatment, and yet failed to do so, or if he made such discovery and failed to so advise defendant, he was guilty of negligence. Moratzky v. Wirth, 62 N. W. Rep. (Minn.) 480; Lewis v. Dwinnell, 84 Me. 497; Harriott v. Plimpton, 166 Mass. 586.

*——: ——: negligence.*

If defendant's testimony is to be believed his application for treatment was on condition that a cure would be effected. He requested of plaintiff that he tell him whether he could be cured; that he must know this, otherwise he would not take treatment since he had no money to throw away. The plaintiff in answer to this stated that he could not then tell whether or not he could effect the desired cure. At each of the subsequent treatments, extending through a period of nearly ten months, the plaintiff gave the defendant assurance that his ailment was yielding to such treatment, thereby encouraging the defendant to continue taking the same. This was the second time the defendant had taken plaintiff's treatment. It was for the jury to decide whether or not, when the defendant applied the second time for treatment on the condition alone that he could be cured, the plaintiff then knew or ought to have known that the former's ailment was incurable, or that it would not yield to the usual treatment or that such treatment would be of no substantial benefit.

Logan v. Field.

It was the duty of the plaintiff to act in the utmost good faith toward the defendant. If he knew that he could not accomplish a cure, or that the treatment adopted would not probably be of any substantial benefit, it was his duty to so advise defendant and a failure to do so was a breach of duty. Chase v. Heaney, 70 Ill. 268; Weeks on Attorneys, sec. 262.

——: good faith to patient.

It seems from defendant's testimony that plaintiff had been long convinced of this before his trip to New York. The assurance that he gave defendant on his return that "I can now cure you" was an implied confession, on his part, that his previous treatment had been, and even if pursued, would be, ineffectual. It was, too, a question for the jury to decide whether or not if he had exercised the care and skill which he was bound to possess he could not or ought not to have discovered before the end of his abortive treatment of the defendant's case or before his New York visit that the cure of the defendant was impossible except by the performance of a surgical operation like that described by him. If the plaintiff at the inception of the treatment did not know this fact, but that during the progress of the same, by the exercise of the care and skill required of him, he could have discovered it but did not, or if he discovered it concealed it from defendant and continued the treatment, then unquestionably he ought not to recover any compensation therefor after the discovery that it would be ineffectual. Hill v. Featherstoneaugh, 7 Bing. (Eng.) 572.

Evidence that will sustain an action against a physician for negligence or which is the same thing malpractice, will be sufficient to defeat his recovery in an action for compensation in such case. If the plaintiff's services were of no value or the remedies used in the treatment of

——: malpractice: recovery for services.

the defendant were worthless and possessed no efficiency in producing a cure, no recovery could be had therefor in an action of this kind. Jonas v. King, 81 Ala. 285. Our conclusion is that the defendant was entitled to go to the jury on the theory of the two instructions previously referred to.

Nor is any reason seen why the defendant was not further entitled to the seventh instruction asked by

——: negligence: recovery: instructions.

him which declared that if the defendant received no benefit from the treatment sued for and this result was due to plaintiff's lack of ordinary professional knowledge, skill or care, or was because of his failure to exercise such skill and care to discover or treat the case of the defendant that there could be no recovery. The instructions given by the court for plaintiff qualified by those given and those which we have stated ought to have been given for defendant present, as we think, a full and fair expression of the law as applicable to the facts which the evidence in the case tends to prove.

There are a number of other grounds upon which the defendant assails the judgment but these, we think, are untenable. The judgment will be reversed and the cause remanded. All concur.