WALTER ZULKINSKY, BY HIS NEXT FRIEND, JOHN ZUL-
KINSKY, AND JOHN ZULKINSKY, INDIVIDUALLY,
PLAINTIFFS-RESPONDENTS, v. PETER GREENBLAT.
DEFENDANT-APPELLANT.

Submitted January term, 1936—Decided May 16, 1936.

Before BROGAN, CHIEF JUSTICE, and Justices LLOYD and
DONGES.

For the plaintiffs-respondents, *Andrew O. Wittreich* and
*Mathew Slepin (Andrew O. Witlreich, on the brief)*.

For the defendant-appellant, *Collins & Corbin (Edward A.
Markley* and *Howard F. McIntyre, of counsel)*.

BROGAN, CHIEF JUSTICE. The infant plaintiff, by his next
friend, recovered judgment for personal injuries alleged to
have been caused by negligent treatment at the hands of the
defendant, a dentist. His father likewise had judgment for
loss of the boy's services and the expense incurred for doctors'
bills and hospitalization in treating his son.

The appellant challenges the judgment on the ground that
the court erred in rejecting motion for directed verdict in
defendant's favor. That motion was advanced on the ground
that there was no proof of defendant's negligence or proof
of any negligence that was the proximate cause of the plain-
tiff's injury.

Briefly, the following are the facts: The infant plaintiff,
age nine, suffered from toothache. At the time he was

brought by his mother to the defendant's office, the gum area around the aching tooth was, as she described it, flaming red. The dentist, in preparation for the extraction of the tooth, inserted a needle containing an anesthetic into the gum on both sides of the tooth; instructed the patient to remain in the waiting room for about ten minutes, when he extracted the tooth from the lower jaw; the cavity was packed with cotton and the boy went home. His face became swollen and he suffered great pain. Returning to the dentist the next day the cavity was probed and the dentist suggested that the boy be taken to a medical doctor. The net result was that the boy became seriously ill, remained in one hospital for four weeks and in another for four months before he was discharged.

It is conceded that he suffered from osteomyelitis. It seems likewise to be conceded that an infection was present in the gum area around the tooth at the time the tooth was extracted by the defendant.

It is the plaintiff's claim that the serious illness of the boy was the result of the negligent treatment given him by the dentist, the evidence in support of that charge being that the dentist used an improper method to produce anesthesia before extracting the tooth. It is charged that the osteomyelitis was brought about by the defendant's using the infiltration method to cause loss of sensation which, by the injection of a needle into the infected area, and the consequent puncture of the tissues, permits the infection to escape into the jaw bone region—this, plaintiff's witnesses claim is an improper and discarded method—instead of the conductive method which calls for the injection of an anesthetic outside of the infected area.

The question before us narrows down to whether the defendant possessed and used that degree of care, skill and diligence possessed by the average dentist in good standing.

The rule in cases of this kind has been stated in *Klitch* v. *Betts*, 89 *N. J. L.* 348, 353; 98 *Atl. Rep.* 427, "the dentist is not an insurer of results; he is not answerable for infection or results which follow the extraction of teeth provided he

has used due skill and care in the extraction and subsequent treatment. In offering his services to the public he impliedly contracts that he possesses and will use in the treatment of his patients a reasonable degree of skill and learning and that he will exercise reasonable care and exert his best judgment to bring about good results. A failure to perform his duty renders him liable for injuries caused thereby."

Whether this defendant used that standard of care which the law requires of him was a matter for expert testimony. One medical expert testified the boy had "a very messy infection * * * infection of the muscles outside the jaw and down below the jaw and involving the whole area * * * an acute condition of the bone * * * acute osteomyelitis;" that he threw off dead bone. Another expert witness, a practicing dentist of sixteen years experience, testified, in answer to a hypothetical question, that the method of anesthesia used by the defendant was by infiltration; that the area around the tooth, at the time the boy was presented to the defendant for dental services, was in an infected condition; and that the defendant dentist did not use the kind of anesthetic suitable for the condition in question and did not exercise the skill that is ordinarily used by members of his profession in cases of this character * * * that under the condition described, the proper method would be the conductive or general anesthesia and that good practice * * * required conductive anesthesia to prevent the spread of infection, which is a thing to be avoided; and * * * further, resting on the plaintiff's description of his sensations in various parts of his mouth at the time the anesthetic was injected, * * * the infiltration method of anesthesia was used, and that this method might reasonably be expected under the circumstances and the condition of the gum, at the time, to result in osteomyelitis and cellulitis.

Other dental experts for the plaintiff corroborated this testimony that the ordinary practitioner should suspect infection when presented with the condition which the boy exhibited; that it was bad practice, contrary to that of the ordinary skillful dentist, to use the infiltration method of anesthesia by

injection into the infected region instead of the conductive method which calls for injection outside of the infected area.

In answer, the defendant himself admitted that an anesthesia by infiltration on the lower jaw, as here, would not have been proper and that in this case he used the approved mandibular (conductive) method. It was further testified by experts that the defendant used and exercised the skill that is required and ordinarily possessed by others in his profession in his treatment of the boy and, further, that even if the infiltration method was used it would be in keeping with proper practice in a great many instances.

There was persuasive proof offered by the defendant and his witnesses that his treatment of the boy was entirely proper and that the methods adopted were up to the ordinary degree of skill and care required by the law of those who administer to the ills of others, but we cannot here consider the quality or the amount of proof. To us there seems to have been, at the time motion was advanced for a direction of verdict for the defendant, a conflict of fact that made for consideration by the jury.

The rule is that "if there is any evidence which, standing alone, or considered apart from opposing evidence, is, if believed by a jury, legally sufficient, or might reasonably tend to support the verdict, though such evidence may not be of an entirely certain and satisfactory nature, it will not be disturbed for, upon the mere weight of evidence, the jury are the judges. Inferences of fact are to be deduced by the jury, and whenever there is evidence from which an existence of fact sufficient to support a verdict might have been inferred, the verdict will not be disturbed. 3 *Cyc.* 348; *Klitch* v. *Betts, supra* (at *p.* 356).

In our judgment, the trial court was justified in denying the motion for directed verdict.

The judgment will be affirmed, with costs.