JOSÉ M. GUZMÁN, Plaintiff and Appellee, *v.* MIGUEL A. SILÉN, Defendant and Appellant.

No. 12758. Decided November 15, 1962.

*F. Fernández Cuyar* for appellant. *C. Andréu Ribas* for appellee.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

In this action plaintiff charged defendant-appellant with professional negligence and claimed compensation for damages. Plaintiff engaged the professional services of defendant, Dr. Miguel A. Silén, on June 29, 1953. The following day defendant made an extraction of appellee's first left molar. As a result of this extraction an antro-oral fistula in the left molar region of the plaintiff-patient was formed. When doctor Silén noticed that the maxillary sinus was exposed, he immediately undertook the extraction of the two adjacent molars, which were involved in a chronic infectious process. Since the left first molar was in a necrotic condition, he proceeded to remove the necrotic tissue and part of the healthy tissue to prevent the spreading of the infection. He cleaned and irrigated the whole area and filled the remaining cavity with "gel foam"; he applied a zinc oxide-eugenol dressing with cotton fibers to obtain the required consistency; he sutured the area to keep the "gel foam" in place and advised plaintiff to make soft, warm, saline mouthwashes upon arising in the morning.

A week later the new tissue around the cavity did not heal sufficiently so as to cause the antro-oral fistula to disappear; therefore defendant removed the dressing, irrigated the area, and applied a new dressing. He also prescribed aureomycin capsules. The condition did not vary and defendant kept repeating the aforesaid treatment until finally, in a sixth intervention, he made a soft tissue flap and removed sufficient bone so as to obtain approximation of the soft tissue.

In the meantime, plaintiff suffered intense physical pain, distress because he could not eat his food, discomfort when trying to do so, and the resulting loss of sleep and weight, besides missing a week's work.

Realizing that his condition was not improving and that the operations which defendant was performing were not healing the cavity produced by the extraction of the molar, plaintiff went to Dr. Andrés Salazar, the physician who assisted the workers of the cement factory where he worked, and Dr. Salazar referred him to the dental surgeon Doctor Dávila Alonso, who in turn referred him to Dr. Ernesto Dávila Díaz, plaintiff's expert and an acknowledged authority in the field of dental surgery in Puerto Rico. On October 7, 1953, that is, three months after the first operation by defendant, Doctor Dávila Díaz examined plaintiff for the first time. The latter had a sickly aspect and had an internal disfiguration in his mouth which was visible only when he opened it. Doctor Dávila Díaz found that plaintiff had a chronic antro-oral fistula in the left molar region which dated back to several weeks and which gave evidence that surgery had been practiced on same.

Due to the patient's condition Doctor Dávila Díaz submitted him to a prophylactic antibiotic treatment and vitamin "C" to aid in the healing, and on October 12, 1953 he submitted him to a plastic surgical intervention, transplanting palatal tissue to cover the fistula. The patient's progress was noticeable and within two or three weeks his condition was nearly normal.

The trial court concluded, "as a question of fact, because of the testimony not only of the expert Doctor Dávila Díaz, but also of the testimony of defendant's expert, Doctor Dones, both acknowledged oral surgeons, that it is the regular and constant practice in this community, already established by the dentists dedicated to the general practice of the profession, to refer patients who present antro-oral fistulas like the one which developed in plaintiff's mouth, to oral surgeons for its operation and treatment."

In its conclusions of law the trial court stated:

"We have no doubts that there is a perfect relation of cause and effect between the action and omission on defendant's part and the injuries caused plaintiff. Though it is true that a professional carries out his work with a certain degree of care and reasonable skill, it is also true that such a presumption is contestable, through expert evidence, which in this case consists in the testimony of one of the most distinguished surgeons of this community, Doctor E. Dávila Díaz, and even defendant's expert himself, the equally distinguished professional, Doctor Marcos A. Dones."

The aforesaid court rendered judgment sustaining the complaint and ordering defendant to pay plaintiff the sum of $3,000 plus costs.

Defendant assigns the following errors:

"(1) The Superior Court erred in concluding, as a matter of law, that defendant was negligent because he did not refer his patient to an oral surgeon and because he did not consult any professional of more experience.

"(2) The Superior Court erred in concluding, as a matter of law, that the procedures and techniques followed by defendant did not adjust to the best indications of dental science and practice.

"(3) The Superior Court erred, as a matter of law, in concluding that there is a perfect relation of cause and effect between defendant's negligence and the damages caused plaintiff."

 There is no doubt that since defendant is authorized to practice dental surgery in Puerto Rico, he may legally perform operations of the maxillary bones, gums, oral cavity, or adjacent tissues. 20 L.P.R.A. § 92.[1] However, the dental surgeon, as in other professions, is under the obligation to exercise the proper care and skill in the practice of his profession. The norms of care and skill required of the dentist are the same as those imposed by law upon physicians and surgeons. *Francisco Carmona* v. *Dr. Wilfredo Torres and Dr. Mario Felipe Ramírez*, per curiam opinion decided by this Court on January 28, 1954. It has been established as a doctrine that a physician is only obliged to give his patients that medical attention which is generally employed by the rest of the physicians in the community. *Rivera* v. *Dunscombe*, 73 P.R.R. 764; *Hopkins* v. *Heller*, 210 Pac. 975; *Dunbar* v. *Adams*, 276 N.W. 895.

 We are in agreement that the exposition or fracture of the maxillary sinus resulting from an extraction of a superior molar is not tantamount to, nor sufficient, in itself, to raise the presumption of negligence in a dentist. However, the negligence imputed to defendant in this case consists (1) in failing to apply an adequate treatment to the patient after the perforation of the maxillary sinus, and (2) in not referring the patient to an oral surgeon.

 The expert evidence was contradictory as to whether or not the treatment applied by defendant to plaintiff was correct and adequate. And apparently so were the authorities cited by the experts. We have already decided that courts are not bound to follow blindly the opinion of an expert, particularly when it is in conflict with other expert testimony. *Housing Authority* v. *Viera*, 72 P.R.R. 683; *León* v. *Industrial Commission*, 58 P.R.R. 905; *People* v.

---

[1] The evidence shows, however, that surgery is a specialty in the profession of dentistry, that additional studies of determined subjects are required, among others, specialized anatomy of the head and neck, pathology, materia medica and radiology.

*Bonelli*, 19 P.R.R. 65. In *Adams* v. *Boyce*, 99 P.2d 1044, it was decided that in a malpractice action what is or is not the proper practice is a question for experts and it can be established only by their testimony. Doctor Dávila Díaz testified that the treatment given to plaintiff by defendant was in this case contraindicated. His testimony is supported by the opinion of other authorities.

In *Manila* v. *Meacham*, 211 P.2d 747, it was decided that when there is no conflicting evidence the court may decide, as a matter of law, whether the treatment is or is not in agreement with a recognized system of surgery, but that when there is a difference of opinion between the experts as to that fact, the question must be submitted to the jury. *Mirich* v. *Balsinger*, 127 P.2d 639; *Vigneault* v. *Dr. Hewson Dental Company*, 15 N.E.2d 185; *Hewitt* v. *Eisenbart*, 55 N.W. 252; *Stohlman* v. *Davis*, 220 N.W. 247; *Zulinsky* v. *Greenblat*, 184 Atl. 806.

In our jurisdiction it was the judge's duty to decide the question, and since his decision was based on circumstantial evidence and since there was nothing to indicate that it was clearly erroneous, we shall not disturb it. *Ortiz* v. *Martorell*, 80 P.R.R. 525; *Vidal* v. *Barletta*, 79 P.R.R. 752; *Carrión* v. *Treasurer of P. R.*, 79 P.R.R. 350.

As a general rule it should be part of the norms of care and skill required by law of professionals who are engaged in the general practice of medicine and surgery that if they find out or should know or find out that the patient's condition demands a further degree of learning, skill, ability or qualification to treat him with reasonable probability of success, it is their duty to so inform the patient or advise him of his need to be submitted to another or to a different treatment. *Sinz* v. *Owens*, 205 P.2d 3; *Simone* v. *Sabo*, 231 P.2d 19; *Morry Berardi et al.* v. *Samuel Menicks*, 164 N.E.2d 544; *Logan* v. *Field*, 75 Mo. App. 594; *Tvedt* v. *Haugen*, 294 N.W. 183.

In the case at bar defendant had ample opportunity to realize his lack of skill and capacity to cure plaintiff, and in spite of that fact he repeatedly submitted him to surgical interventions without obtaining favorable results, until the patient decided to consult another dentist and submit himself successfully to a different treatment, without receiving defendant's advice in that respect at any time whatsoever.

There is substantial evidence in the record to the effect that it is the practice of this community, because there are such facilities, that dentists who are engaged in the general practice of their profession, refer the patients who present a condition as that of plaintiff, to specialists in oral surgery for their attention and treatment. Therefore, it constitutes negligence not to refer the patients to a specialist, as long as there is reasonable opportunity therefor, when the doctor or dentist who is a general practitioner, has or should have the knowledge that he is not competent, or is unable to achieve his cure. In so deciding the trial court did not commit error.

Neither did it err in deciding that there is a relation of cause and effect between defendant's negligence and the harm caused plaintiff. It is a well-settled rule that the relation of casuality between defendant's action and the harm caused in cases of professional liability is established in the same way as an ordinary case of damages due to negligence. In Sáez v. Municipality, 84 P.R.R. 515 (1962), we stated that "It is only necessary that the plaintiff establish by a preponderance of the evidence, believed by the trier, that the resulting damage was caused by acts [2] of negligence, lack of care or skill of the physician. . . .It is necessary that the relation of causation should not be the product of mere speculation or conjecture, . . . but a preponderance of the evidence, . . . namely, that it was more probable that the harm resulted from the negligence imputed by the plaintiff.

---

[2] They may be acts or *omissions* to act on defendant's part.

. . . He can not be required in this respect to exclude every other possible causation of the damage. . . . If the evidence discloses *more than one possible cause* of the damage, the physician can not be adjudged liable unless the evidence as a whole shows that the negligent act for which he is responsible is the more probable." (Italics ours.) "Where the conclusion is not one within the common knowledge of laymen, expert testimony may provide a sufficient basis for it." WILLIAM L. PROSSER, Law of Torts 222, citing, among others, the case of *Dunham* v. *Village of Canisteo,* 303 N.Y. 498, 104 N.E.2d 872 (1952). According to the findings of fact of the trial court defendant did not refer plaintiff to a specialist as is the usual practice in cases analogous to the case at bar, which action brought about the pains, loss of work and inconveniences which gave rise to this litigation. That is, the damages suffered by plaintiff were the result of defendant's negligence, according to the expert testimony offered in the trial court and so believed by the trier of the facts.

The judgment rendered by the Superior Court will be affirmed.

