JOSÉ M. GUZMÁN, demandante y recurrido, *v.*
MIGUEL A. SILÉN, demandado y recurrente.

*Número:* 12758 *Resuelto:* 15 de noviembre de 1962

*F. Fernández Cuyar,* abogado del recurrente; *C. Andréu Rivas,* abogado del recurrido.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

En esta acción el demandante imputó al demandado recurrente conducta profesional negligente y le reclamó indemnización de daños y perjuicios. Ocurrió que el demandante contrató los servicios profesionales del demandado Doctor Miguel A. Silén, allá para el 29 de junio de 1953. Al día siguiente dicho demandado le extrajo al recurrido la primera molar izquierda. A consecuencia de tal extracción se formó una fístula antro-oral en la región molar izquierda del paciente-demandante. Al notar el doctor Silén que había una exposición del seno maxilar procedió inmediatamente a la extracción de las dos piezas adyacentes, las cuales presentaban una condición patológica crónica infecciosa. Estando la primera molar izquerda necrótica procedió el demandado a remover el tejido muerto y parte del bueno para evitar la filtración de la infección. Limpió e irrigó toda el área y cerró con "gel foam" la cavidad que había quedado; aplicó una cura (dressing) de óxido de zinc, eugenol y fibras de algodón para dar la consistencia debida; tomó dos puntos de sutura para ajustar el "gel foam" y le recomendó al demandante que se lavara la boca suavemente al levantarse por las mañanas con agua de sal tibia.

Una semana más tarde el tejido nuevo alrededor de la cavidad no cicatrizaba lo suficiente como para hacer desaparecer la fístula antro-oral por lo que el demandado removió el "dressing", irrigó el área y empacó nuevamente. También prescribió aureomicina en cápsulas. La condición no varió

y continuó el demandado repitiendo el mencionado tratamiento hasta que finalmente, en una sexta intervención, seccionó la encía y abrió el paladar del demandante tratando de conseguir la unión del tejido.

Mientras todo esto ocurría el demandante sufría intensos dolores físicos, malestar al no poder ingerir sus alimentos, incomodidad al tratar de hacerlo y la consiguiente pérdida de sueño y peso, además de haber perdido una semana de trabajo.

Viendo que su condición no mejoraba y que las intervenciones que el demandado le hacía en la boca no lograban la cicatrización de la cavidad producida por la extracción de la muela, el demandante recurrió al doctor Andrés Salazar, médico que atendía a los trabajadores de la fábrica de cemento donde él trabajaba y éste lo refirió al cirujano dentista doctor Dávila Alonso, quien a su vez lo refirió al doctor Ernesto Dávila Díaz, perito de la parte demandante y reconocida autoridad en el campo de la cirugía dental en Puerto Rico. El 7 de octubre de 1953, o sea más de tres meses después de la primera intervención por el demandado, el doctor Dávila Díaz examina al demandante por primera vez. Éste tenía el aspecto de un hombre enfermizo y presentaba una desfiguración interna en su boca visible únicamente cuando la abría. Encontró el doctor Dávila Díaz que el demandante tenía una fístula antro-oral crónica en la región molar izquierda, cuya existencia databa de varias semanas antes y la misma evidenciaba que se había intervenido con ella quirúrgicamente.

Dada la condición del paciente el doctor Dávila Díaz lo sometió a un tratamiento profiláctico de antibióticos y vitamina "C" para ayudar a la cicatrización y el día 12 de octubre de 1953 lo sometió a una operación de cirugía plástica, trasplantando tejido del paladar al lugar de la fístula. El progreso del paciente se hizo notar y al cabo de dos o tres semanas su condición era casi normal.

El tribunal sentenciador concluyó, "como cuestión de hecho; por el testimonio no sólo del perito doctor Dávila Díaz, sino por el testimonio del perito del demandado doctor Dones, ambos reconocidos cirujanos orales, que es práctica corriente y constante en esta comunidad ya establecida por los dentistas que se dedican a la práctica general de la profesión, la de referir los pacientes que presentan fístulas antro-orales, como la que se desarrolló en la boca del demandante, a los cirujanos orales para su operación y tratamiento".

En sus conclusiones de derecho el tribunal de instancia expresó:

"No abrigamos dudas de que existe una perfecta relación de causa y efecto entre la acción y la omisión por parte del demandado y el mal producido al demandante. Si bien es cierto que se presume que un profesional realiza su labor con cierto grado de cuidado y habilidad razonable, no es menos cierto que tal presunción es controvertible, mediante prueba pericial, que en este caso consiste en el testimonio de uno de los más distinguidos cirujanos orales de esta comunidad, doctor E. Dávila Díaz, y aun el propio perito del demandado, también distinguido profesional Dr. Marcos A. Dones."

Dicho tribunal dictó sentencia declarando con lugar la demanda y condenando al demandado a pagar al demandante la suma de $3,000 más las costas.

Se señala por el demandado la comisión de los siguientes errores:

"(1) Erró el Tribunal Superior al concluir como cuestión de derecho que el demandado fue negligente porque no refirió su paciente a un cirujano oral y porque no consultó con ningún profesional de más experiencia.

"(2) Erró el Tribunal Superior al concluir como cuestión de derecho que el procedimiento y técnicas seguidas por el demandado no se ajustan a lo que indica la ciencia dental y la mejor práctica.

"(3) Erró el Tribunal Superior como cuestión de derecho al concluir que existe una perfecta relación de causa y efecto entre la negligencia del demandado y el mal producido al demandante."

No hay duda de que estando el demandado autorizado para ejercer la cirugía dental en Puerto Rico, puede legalmente practicar operaciones de los huesos maxilares, encías, cavidad oral y tejidos adyacentes humanos. 20 L.P.R.A. sec. 92.(1) Sin embargo, el cirujano dental, como ocurre en otras profesiones, tiene la obligación de ejercer el debido cuidado y destreza en el desempeño de su profesión. Las normas de cuidado y destreza requeridas del dentista son las mismas que la ley impone a los médicos y cirujanos. *Francisco Carmona* v. *Dr. Wilfredo Torres y Dr. Mario Felipe Ramírez*, resuelto *per curiam* por este Tribunal en 28 de enero de 1954. Se ha establecido como doctrina que un médico sólo viene obligado a dar a su paciente aquella atención médica que generalmente se emplea para casos similares por el resto de los médicos en la comunidad. *Rivera* v. *Dunscombe*, 73 D.P.R. 819; *Hopkins* v. *Heller*, 210 P. 975; *Dumbar* v. *Adams*, 276 N.W. 895. ■

Convenimos en que la exposición o fractura del seno maxilar como consecuencia de una extracción de un molar superior no equivale por sí sola, ni es suficiente para levantar presunción de negligencia en un dentista. Sin embargo, la negligencia imputada al demandado en este caso consiste (1) en no aplicar un tratamiento adecuado al paciente después de ocurrir la perforación del seno maxilar, y (2) en no referir el paciente a un cirujano oral. ■

En cuanto a si el tratamiento aplicado por el demandado al demandante era correcto y adecuado, la prueba pericial fue contradictoria. Y aparentemente también lo eran los textos citados por los testigos peritos. Ya hemos resuelto que un tribunal no está obligado a seguir indefectiblemente la opinión de un perito sobre todo cuando el mismo está en conflicto con testimonios de otros peritos. *Autoridad de Hogares* v. *Viera*, 72 D.P.R. 732; *León* v. *Comisión Industrial*, 58 D.P.R.

---

(1) La prueba demuestra sin embargo, que la cirugía es una especialidad en la profesión del dentista, que se requieren estudios adicionales de determinadas materias, entre ellas, anatomía especializada de la cabeza y el cuello, patología, materia médica y radiografía.

905; *El Pueblo* v. *Bonelli*, 19 D.P.R. 69. En el caso de *Adams* v. *Boyce*, 99 P.2d 1044, se resolvió que en los casos de *malpractice* lo que es o no es una práctica propia es una cuestión para los expertos y solamente puede establecerse con sus testimonios. El Dr. Dávila Díaz declaró que el tratamiento dispensado al demandante por el demandado, estaba en ese caso contraindicado. Su afirmación encuentra apoyo en la opinión de otras autoridades. ■

En *Manila* v. *Meacham*, 211 P.2d 747, se resolvió que cuando no hay evidencia conflictiva, la corte puede decidir como cuestión de derecho si el tratamiento está o no de acuerdo con un reconocido sistema de cirugía, pero que cuando hay divergencia de criterio entre los peritos en cuanto a ese hecho, la cuestión debe ser sometida al Jurado. *Mirich* v. *Balsinger*, 127 P.2d 639; *Vigneault* v. *Dr. Hewson Dental Company*, 15 N.E.2d 185; *Hewitt* v. *Eisenbart*, 55 N.W 252; *Stohlman* v. *Davis*, 220 N.W. 247; *Zulinsky* v. *Greenblat*, 184 A. 806. ■

En nuestra jurisdicción correspondía al juez decidir la cuestión, y estando su determinación basada en evidencia sustancial y no habiendo indicación de que la misma sea claramente errónea, no la alteraremos. *Ortiz* v. *Martorrell*, 80 D.P.R. 544; *Vidal* v. *Barletta*, 79 D.P.R. 800; *Carrión* v. *Tesorero*, 79 D.P.R. 371. ■

Como regla general debe ser parte de las normas de cuidado y destreza requeridas por la ley a los profesionales que se dedican a la práctica general de la medicina y la cirugía el que si descubren o deben saber o descubrir que la dolencia del paciente rebasa sus conocimientos, pericia, habilidad o capacidad para tratarlo con razonable oportunidad de éxito, está en el deber de informarlo así al paciente o de aconsejarle de la necesidad de que se someta a otro o a un tratamiento diferente. *Sinz.* v. *Owens*, 205 P.2d 3; *Simone* v. *Sabo*, 231 P.2d 19; *Morry Berardi et al* v. *Samuel Menicks*, 164 N.E.2d 544; *Logan* v. *Field*, 75 Mo. App. 594; *Tvedt* v. *Haugen*, 294 N.W. 183.

En este caso el demandado tuvo amplia oportunidad para comprobar su falta de habilidad y capacidad para curar al demandante y a pesar de ello le sometió a repetidas intervenciones sin lograr resultados favorables hasta que el paciente decidió, sin que en ningún momento así se lo aconsejara el demandado, consultar a otro dentista y someterse con éxito a un tratamiento diferente. 

En el récord hay prueba sustancial al efecto de que es práctica en esta comunidad, porque hay facilidades para ello, el que los dentistas que se dedican a la práctica general de su profesión, refieran a los pacientes que presentan una condición como la del demandado, a especialistas en cirugía oral para su atención y tratamiento. Constituye pues negligencia el no referir el paciente a un especialista, siempre que haya la oportunidad razonable para ello, cuando el médico o el dentista de práctica general tiene o debe tener conocimiento de que no está capacitado o no puede lograr su curación. Al así resolverlo no incurrió en error el tribunal sentenciador. 

Tampoco incurrió en error al concluir que existe relación de causa y efecto entre la negligencia del demandado y el mal producido al demandante. Es principio establecido que la relación de causalidad entre la actuación del demandado y el daño ocasionado en casos por responsabilidad profesional se establece de igual manera al de un caso ordinario de daños y perjuicios por negligencia. En *Sáez* v. *Municipio de Ponce*, 84 D.P.R. 535 (1962), dijimos que "Todo cuanto se requiere es que la parte demandante establezca por la preponderancia de la evidencia—creída por el juzgador—que el daño emergente fue causado por los actos[2] de negligencia, falta de cuidado o impericia del médico... Se requiere que la relación de causalidad no se establezca a base de una mera especulación o conjetura, sino por la preponderancia de la evidencia, o sea, que el daño se ha debido

---

[2] Pueden ser actos u *omisión* por parte del demandado.

540

con mayores probabilidades a la negligencia que el demandante imputa. No puede exigírsele a este respecto que elimine toda otra posible causa del daño. Si la evidencia señala más de una causa probable del daño, no puede imponérsele responsabilidad al médico a menos que del conjunto de la prueba surja que la actuación negligente atribuída a éste es la que con mayores probabilidades lo causó." "Cuando la conclusión no está al alcance de los conocimientos normales de un lego, testimonio experto puede proveer suficiente base para llegar a dicha conclusión." William L. Prosser, *Law of Torts*, citando, entre otros, el caso de *Dunham* v. *Village of Canisteo*, 1952, 303 N.Y. 498, 104 N.E.2d 872. De acuerdo a la determinación de hechos del tribunal de instancia el demandado no refirió al demandante a un especialista como suele ser la norma en casos análogos al presente, trayendo esta actuación como consecuencia las dolencias, pérdida de trabajo e inconvenientes que dieron lugar a este pleito. Esto es, los daños sufridos por el demandante fueron el resultado de la negligencia del demandado, según testimonio experto ofrecido en el tribunal de primera instancia y así creído por el juzgador de los hechos.

*Se confirmará la sentencia dictada por el Tribunal Superior.*