# 2004 DTA 92

### TRIBUNAL DE CIRCUITO DE APELACIONES
### REGION JUDICIAL DE SAN JUAN
### PANEL II

ZORAIDA RIVERA FIGUEROA, EN SU CARACTER PERSONAL Y EN REPRESENTACION DE SUS HIJOS MENORES DE EDAD: CARMELO MELENDEZ RIVERA, JAVIER MELENDEZ RIVERA Y RUBEN MERCADO RIVERA; ROSA RIVERA FIGUEROA, EN SU CARACTER PERSONAL
Apelantes

v.

DR. MIGUEL GARRATON, EN SU CARACTER PERSONAL Y EN REPRESENTACION DE LA SOCIEDAD LEGAL DE GANANCIALES QUE TIENE CONSTITUIDA CON FULANA DE TAL; DR. JOSE A. ROSA SIERRA, EN SU CARACTER PERSONAL Y EN REPRESENTACION DE LA SOCIEDAD LEGAL DE GANANCIALES QUE TIENE CONSTITUIDA CON ZUTANA DE TAL
Apelados

Núm. KLAN-03-01455

San Juan, Puerto Rico, a 15 de abril de 2004

Panel integrado por su Presidente, el Juez Brau Ramírez,
la Juez Pabón Charneco y el Juez Rivera Martínez

Brau Ramírez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

### I

Los apelantes de epígrafe son los hijos y hermana de Zoraida Rivera Figueroa, quien falleció el 24 de febrero de 2004, como consecuencia de una metástasis generalizada de un cáncer de la lengua.

La presente controversia está relacionada al tratamiento médico recibido por la causante en el período anterior a su muerte entre 1996, y la fecha de su fallecimiento en 2004. Durante este período, la causante de los apelantes fue atendida por varios médicos y dentistas, entre los cuales se incluye el Dr. José A. Morales Morales. Los apelantes alegan que los facultativos en cuestión actuaron de manera negligente al no detectar el cáncer de la Sra. Rivera, omitiendo iniciar a tiempo el tratamiento contra dicha enfermedad. Ello provocó que para cuando fue finalmente detectado, el padecimiento de la causante se hallaba en una etapa muy avanzada, lo que causó que no pudiera salvársele la vida.

Según alegan los apelantes, en febrero de 1996 la Sra. Rivera comenzó a quejarse de que tenía una pequeña laceración en el lado izquierdo de su lengua. Dicha laceración no cicatrizó ni sanó en el tiempo que era de esperarse, por lo que la Sra. Rivera visitó a varios médicos y dentistas en los meses subsiguientes. A pesar de ser examinada y tratada, la lesión en la lengua de la causante continuó sin sanar.

En noviembre de 1996, la Sra. Rivera visitó al Dr. Miguel Garratón, especialista en otorrinolaringología. Esta la examinó y sospechó que la lesión podía ser cancerosa. El Dr. Garratón ordenó una biopsia del tejido de la lesión.

El examen fue llevado a cabo por el Dr. José A. Rosa Sierra, especialista en patología. El 15 de noviembre de 1996, el Dr. Rosa Sierra rindió un informe escrito sobre la muestra de tejido que le había sido enviada. En su informe, el Dr. Rosa hizo constar las siguientes observaciones:

*"Gross and Microscopic Diagnosis:*

*Mucosa of tongue, biopsy, focal necrosis with acute inflammation and extensive eosinophilic fibronous coagula.*

*Note: These histopathologic changes are suggestive of erythema multiforme. Please clinically correlate."*

A pesar de que estos hallazgos debieron de alertar al Dr. Garratón sobre la posible existencia de cáncer en la paciente, dicho facultativo erróneamente interpretó que el informe del Dr. Rosa era negativo para cáncer y no inició tratamiento para esta enfermedad.

Para diciembre de 1996, la lesión en la lengua de la causante continuaba empeorando. Para esta fecha, la causante estaba siendo atendida también por la Dra. Zhura Pereira, dentista. La Dra. Pereira refirió a la Sra. Rivera al apelado, Dr. José Morales. El Dr. Morales es dentista con especialidad en cirugía maxilofacial. Aparentemente, a la fecha de los hechos, el Dr. Morales tenía algunas funciones docentes en el Recinto de Ciencias Médicas de la Universidad de Puerto Rico.

La Sra. Rivera visitó al Dr. Morales en su oficina el 27 de diciembre de 1996. En esa ocasión, la causante informó al Dr. Morales sobre su historial, su padecimiento y los diversos tratamientos a los que se había sometido. El Dr. Morales realizó a la causante un examen extra-oral y otro intra-oral.

A base de su examen, el Dr. Morales sospechó que la causante pudiera tener una ulceración traumática de la lengua. Ésta le recomendó a la Sra. Rivera que se realizara una nueva biopsia del tejido. Según los apelantes, el Dr. Morales le indicó a la causante que la nueva biopsia tenía que ser efectuada en el Recinto de Ciencias Médicas, pero que ella tendría que esperar hasta enero porque dicho Recinto se encontraba entonces cerrado por el receso navideño.

El Dr. Morales examinó nuevamente a la causante en enero de 1997. En esa ocasión, le ordenó pruebas de alergias.

El 19 de febrero de 1997, la Sra. Rivera visitó al Dr. Fernando Longo quien la examinó y le ordenó una segunda biopsia, la que se efectuó el 7 de marzo de 1997. La biopsia efectuada el 7 de marzo de 1997 reveló que la causante tenía cáncer en la lengua, que el mismo se había extendido hasta el lado derecho y que requería tratamiento inmediato. La causante fue referida al Memorial Sloan-Ketterin Cancer Center en los Estados Unidos.

El 16 de abril de 1997, la Sra. Rivera fue operada en el mencionado hospital. Se le extirpó toda la lengua, se le efectuó una gastrostomía y se le implantó un tubo para alimentarla. Posteriormente, la Sra. Rivera recibió cuarenta y cinco tratamientos de radiación.

En marzo de 1998, la parte apelante instó la presente demanda por daños y perjuicios por impericia médica contra las partes de epígrafe ante el Tribunal de Primera Instancia, Sala Superior de San Juan, solicitando compensación por los daños sufridos por la Sra. Rivera y sus familiares como resultado en la dilación en la detección de su cáncer.

La demanda fue posteriormente enmendada en varias ocasiones. Los demandados contestaron la demanda, negando las alegaciones.

El 24 de febrero de 2002, estando pendiente el procedimiento, la Sra. Rivera falleció, como consecuencia de la metástasis de su cáncer.

Posteriormente, el apelado Dr. Morales presentó una moción de sentencia sumaria, solicitando la desestimación de la reclamación en su contra.

En su moción, el apelado alegó que, contrario a la versión de la parte apelante, durante su examen de la Sra. Rivera el 27 de diciembre de 1996, el apelado había advertido a ésta que ella debía repetir su biopsia, lo que debía realizar "*inmediatamente*". El apelado señaló que inicialmente la Sra. Rivera no había querido hacerse una nueva biopsia, porque la que le habían realizado había resultado muy dolorosa. -

El apelado alegó que él había referido a la causante al Recinto de Ciencias Médicas para la realización de la biopsia y de otros estudios, porque, a diferencia de otros laboratorios, el laboratorio de dicho recinto acostumbraba realizar biopsias de muestra doble, realizando estudios de Hematoxilia y Eosina ("*H. Y E.*") e inmunoflorecencia. Este último estudio es especializado, y requiere un medio especial que sólo estaba disponible en ciertos laboratorios, como el del Recinto de Ciencias Médicas. Dicho laboratorio estaba cerrado en la época navideña, por lo que el Dr. Morales le sugirió a la Sra. Rivera hacerse los estudios a principio de enero de 1997.

Según el apelado, la Sra. Rivera hizo caso omiso a sus órdenes y no fue hasta el 7 de marzo de 1997, bajo el tratamiento del Dr. Longo Rodríguez, que la causante se hizo la segunda biopsia recomendada.

El apelado alegó que los informes de los peritos contratados por la parte apelante no le imputaban

negligencia y/o resultaban especulativos y solicitó la desestimación de la reclamación en su contra.

La moción del apelado estaba apoyada por una declaración jurada prestada por dicha parte y por varios otros documentos del expediente de la Sra. Rivera.

Los apelantes se opusieron a la moción del apelado. En su moción, los apelantes señalaron que la versión ofrecida por la Sra. Rivera sobre su entrevista con el apelado resultaba *"totalmente distinta a la versión del codemandado Morales"*. En particular, la parte apelante negó que el apelado hubiese manifestado a la causante que era necesario que ella se realizara una segunda biopsia *"inmediatamente"*, según lo había alegado el apelado.

Según la parte apelante, el apelado le había manifestado a la Sra. Rivera que esperara a enero para realizarse las pruebas, ya que el Recinto de Ciencias Médicas estaba en receso. No obstante, en enero de 1997, cuando la Sra. Rivera regresó a la oficina del apelado, éste la envió a realizarse pruebas de alergia.

Los apelantes señalaron que, a base de esta versión de los hechos, su perito, el Dr. James Elmore, había opinado que el apelado había actuado con negligencia. El informe del Dr. Elmore concluía sobre este particular:

*"[A] jury and I are obligated to hold Dr. Morales to a higher standard as a professor and educator who most proba[bly] has resident teaching responsibilities. I do not have Dr. Morales['] records available and STRON[G]LY suggest their inclusion in my review. It is inconceivable that a man of this stature could miss a fulminate tongue carcinoma and order allergy tests. Additionally, I have no indication of follow-up care. Lastly, the doctor's refusal to see the patient because school was in recess is unacceptable in the context of [Zoraida Rivera Figueroa's] "seeing" the doctor in 12/96 and not evaluated until 01/97 (not specified). His obligation if the description of events is accurate, is to have a peripheral party, an OMS resident if available or ... emergency room physician and subsequent referral, appropriately evaluate and treat [Zoraida Rivera Figueroa]. If accurately described in the narrative, I regard Dr. Morales performance as unconscionable and deserving of UPR Ethics Committee review as well [as] the Puerto Rico State Licensure Board. No matter how important the practitioner, he has a moral obligation to care appropriately for human beings and not treat them as cattle."*

Luego de otros trámites, el 18 de febrero de 2003, mediante la sentencia parcial apelada, el Tribunal de Primera Instancia declaró con lugar la moción de sentencia sumaria presentada por el apelado y ordenó la desestimación de la demanda en su contra.

La sentencia parcial del Tribunal fue emitida a base de los hechos incontrovertidos propuestos por el apelado en su moción, sin que el Tribunal formulara determinaciones de hechos.

Oportunamente, los apelantes solicitaron al Tribunal que formulara determinaciones de hechos, en apoyo a su dictamen. Mediante resolución emitida el 6 de noviembre de 2003, el Tribunal denegó dicha solicitud.

Insatisfechos, los apelantes acudieron ante este Tribunal mediante el presente recurso de apelación.

## II

En su recurso, los apelantes plantean que el Tribunal de Primera Instancia erró al declarar con lugar la moción de sentencia sumaria presentada por el Dr. José Morales Morales.

La Regla 36.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.2, según se conoce, permite a una parte presentar una moción basada o no en declaraciones juradas, para que se dicte sentencia sumaria a su favor sobre la totalidad o cualquier parte de una reclamación. *P.A.C. v. E.L.A. I*, 150 D.P.R. 359, 374 (2000); *Piñero*

*v. A.A.A.*, 146 D.P.R. 890, 904 (1998); *Soc. de Gananciales v. Vélez & Asoc.*, 145 D.P.R. 508, 526 (1998).

La Regla 36.3 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.3, por su parte, autoriza al tribunal a dictar sentencia sumaria cuando "*no existe controversia real sustancial en cuanto a ningún hecho material y ... como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente*". Véase, en general, *P.A.C. v. E.L.A. I*, 150 D.P.R. a la pág. 374; *Soto v. Rivera*, 144 D.P.R. 500, 518 (1997); *Tello, Rivera v. Eastern Airlines*, 119 D.P.R. 83, 86 (1987); *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 D.P.R. 714, 720 (1986).

El propósito principal de este mecanismo es propiciar la resolución justa, rápida y económica de litigios que no presentan controversias genuinas de hechos materiales, por lo que no se justifica la celebración de un juicio en su fondo. *López v. J. Gus Lallande*, 144 D.P.R. 774, 783 (1998); *Neca Mortg. Corp. v. A&W Dev. S.E.*, 137 D.P.R. 860, 869 (1995).

El Tribunal Supremo de Puerto Rico ha aclarado, sin embargo, que la sentencia sumaria sólo procede en casos claros cuando el Tribunal tiene ante sí la verdad sobre todos los hechos pertinentes y no hace falta una vista evidenciaria. *Rivera v. Dpto. de Hacienda*, 149 D.P.R. 141, 154-155 (1999); *J.A.D.M. v. Centro Com. Plaza Carolina*, 132 D.P.R. 785, 802 (1993).

Si existen dudas sobre la procedencia de la sentencia sumaria, el Tribunal debe brindar a las partes la oportunidad de una vista evidenciaria. Véanse, *S.L.G. v. S.L.G.*, 150 D.P.R. 171, 193 (2000); *Rivera v. Depto. de Hacienda*, 149 D.P.R. a la pág. 158; *Bonilla Medina v. P.N.P.*, 140 D.P.R. 294, 304 (1996); *Rivera et al. v. Superior Pkg., Inc., et al.*, 132 D.P.R. 115, 133 (1992).

La determinación de disponer de un pleito mediante este mecanismo es una que está confiada a la discreción del foro de primera instancia. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 D.P.R. 881, 914 (1994).

Al hacer su evaluación, el Tribunal puede considerar la totalidad de las alegaciones y documentos que obren en el récord, los cuales se toman de la manera más favorable a la parte promovida. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 D.P.R. a la pág. 913; *Corp. Presiding Bishop of LDS v. Purcell*, 117 D.P.R. a las págs. 721-723; *Flores v. Municipio de Caguas*, 114 D.P.R. 521, 525 (1983); *Padín v. Rossi*, 100 D.P.R. 259, 263-264 (1971).

El peso para demostrar que no existe controversia real sustancial sobre los hechos materiales recae sobre la parte que solicita la sentencia sumaria. *Soto v. Rivera*, 144 D.P.R. a la pág. 518; *Pilot Life Ins. Co. v. Crespo Martínez*, 136 D.P.R. 624, 632 (1994). El sólo hecho de no presentar evidencia que contravierta la presentada por la parte promovente no implica que necesariamente proceda la sentencia sumaria. *Jusino et al. v. Walgreens*, 155 D.P.R. ___ (2001), **2001 J.T.S. 154**, a la pág. 374; *PFZ Props, Inc. v. Gen. Acc. Ins. Co.*, 136 D.P.R. a la pág. 913.

Tiene que haber quedado demostrado que la parte promovida no tiene derecho alguno bajo cualquier circunstancia discernible de las alegaciones que no hayan sido refutadas. *Asoc. Pesc. Pta. Figueras v. Pto. del Rey*, 155 D.P.R. ___ (2002), **2002 J.T.S. 4**, a la pág. 583; *García Rivera, et al. v. Enríquez*, 153 D.P.R. ___ (2001), **2001 J.T.S. 15**, a la pág. 820.

La moción debe ser evaluada de la forma más favorable a la parte que se opone a la solicitud de sentencia sumaria y toda inferencia que se haga a base de los hechos y documentos presentados, debe ser interpretada de manera favorable a dicha parte. *Mgmt. Adm. Serv. Corp. v. E.L.A.*, 152 D.P.R. ___ (2000), **2000 J.T.S. 189**, a las págs. 440-441.

Al evaluar una moción de sentencia sumaria, el Tribunal no debe entrar en la credibilidad de los testigos.

*Rosario v. Nationwide Mutual*, 158 D.P.R. ___ (2003) **2003 J.T.S. 34**, a la pág. 644 n. 11; *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 D.P.R. 881, 913 (1994).

Al dictar una sentencia sumaria, el tribunal: (1) analizará los documentos que acompañan la moción solicitando sentencia sumaria y los documentos incluidos con la moción de oposición y aquéllos que obren en el expediente del tribunal; (2) determinará si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. El tribunal no debe dictar sentencia sumaria cuando: (1) existen hechos materiales no controvertidos; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material; o (4) como cuestión de derecho no procede. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 D.P.R. a la pág. 913.

El Tribunal Supremo de Puerto Rico ha observado que existen ciertos tipos de litigios y controversias que, por su naturaleza, resultan inapropiados para ser adjudicados por la via sumaria. Entre estos se encuentran las controversias que envuelven elementos subjetivos, en las que el factor de credibilidad juega un papel esencial para llegar a la verdad y donde el litigante depende en gran parte de lo que extraiga del contrario en el curso de un juicio vivo. *Rosario v. Nationwide Mutual*, **2003 J.T.S. 34**, a las págs. 641-642; *Jusino et als. v. Walgreens*, **2001 J.T.S. 154**, a la pág. 374; *G.G. & Supp. Corp. v. S. & F. Systs., Inc.*, 153 D.P.R. ___ (2001), **2001 J.T.S. 57**, a la pág. 1,142; *Rivera v. Depto. de Hacienda*, 149 D.P.R. a la pág. 152; *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 D.P.R. a la pág. 914; *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 D.P.R. a las págs. 722-723.

En la situación de autos se trata de una solicitud de sentencia sumaria presentada en el contexto de una acción de daños y perjuicios por mala práctica de la medicina.

Según se conoce, en nuestra jurisdicción, la responsabilidad civil resultante de actos u omisiones culposas o negligentes está regida por el Artículo 1802 del Código Civil, 31 L.P.R.A. sec. 5141. Dicho precepto establece que el que por acción u omisión cause daño a otro, mediante culpa o negligencia, viene obligado a reparar el daño causado. El artículo añade que la imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización.

El Tribunal Supremo de Puerto Rico ha aclarado que para que exista responsabilidad bajo dicho precepto, es necesario que concurran los siguientes elementos: (1) un daño, (2) una acción u omisión negligente, y (3) la relación causal entre el daño y la conducta culposa o negligente. *Pons Anca v. Engebretson*, 160 D.P.R. ___ (2003), **2003 J.T.S. 151**, a la pág. 229; *Montalvo v. Cruz*, 144 D.P.R. 748, 755 (1998); *Toro Aponte v. E.L.A.*, 142 D.P.R. 464, 473 (1997); *Elba A.B.M. v. U.P.R.*, 125 D.P.R. 294, 308 (1990).

La culpa o negligencia consiste en la omisión de aquella diligencia que exija la naturaleza de la obligación, correspondiendo tal diligencia a las circunstancias de las personas, del tiempo y del lugar. La diligencia exigible en estos casos es la que correspondería ejercitar a un buen padre de familia o un hombre prudente y razonable. *Pons Anca v. Engebretson*, **2003 J.T.S. 151**, a las págs. 227-228; *Toro Aponte v. E.L.A.*, 142 D.P.R. a la pág. 473; *Elba A.B.M. v. U.P.R.*, 125 D.P.R. a la pág. 309.

El deber de cuidado impone tanto la obligación de anticipar, como la de evitar, la ocurrencia de daños cuya probabilidad es razonablemente previsible, y no se limita a anticipar solamente el riesgo preciso o las consecuencias exactas de determinada conducta. *Montalvo v. Cruz*, 144 D.P.R. a la pág. 756; *Ginés Meléndez v. Autoridad de Acueductos*, 86 D.P.R. 518, 524-525 (1962). No se responde, sin embargo, por acontecimientos que no son razonablemente previsibles, es decir, por sucesos fortuitos. *Toro Aponte v. E.L.A.*, 142 D.P.R. a la pág. 473.

Para determinar si una omisión es generadora de responsabilidad, se considera: (1) la existencia o

inexistencia de un deber jurídico de actuar por parte del alegado causante del daño, y (2) si de haberse llevado a cabo el acto omitido el daño se hubiera evitado. *Toro Aponte v. E.L.A.*, 142 D.P.R. a la pág. 474.

En nuestro ordenamiento rige la teoría de causalidad adecuada para determinar responsabilidad por los daños bajo el citado artículo 1802. Según dicha doctrina, *"no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general"*. *Pons Anca v. Engebretson*, **2003 J.T.S. 151**, a la pág. 228; *Montalvo v. Cruz*, 144 D.P.R. a la pág. 756; *Soc. de Gananciales v. Jerónimo Corp.*, 103 D.P.R. 127, 134 (1974).

Si el daño se debe a la conducta de más de una persona, todos responden civilmente ante el perjudicado, como cocausantes del daño, de acuerdo a sus respectivas culpas. Dichos cocausantes del daño son responsables solidariamente frente al perjudicado, sin perjuicio de que en la relación interna entre ellos la obligación se divida de acuerdo a la proporción en que la culpa o negligencia de cada uno contribuyó a la ocurrencia del daño. *Torres Ortiz v. E.L.A.*, 136 D.P.R. 556, 564-565 (1994); *Sánchez Rodríguez v. López Jiménez*, 118 D.P.R. 701, 705-706 n. 2 (1987); *Ramos v. Caparra Dairy, Inc.*, 116 D.P.R. 60, 62-64 (1985).

En cuanto al grado de diligencia que deben observar los profesionales de la salud, el Tribunal Supremo ha establecido que los mismos están obligados a seguir las normas mínimas de cuidado, conocimiento y destrezas del *"profesional razonable"*. El contenido de esta obligación queda delimitado conforme al estado de conocimiento y práctica prevaleciente, que satisface las exigencias generalmente reconocidas por la referida profesión, a la luz de los modernos medios de comunicación y enseñanza. *Castro Ortiz v. Mun. de Carolina*, 134 D.P.R. 783, 793 (1994); *Medina Santiago v. Vélez*, 120 D.P.R. 380, 384-385 (1988); *Zambrana v. Hospital Santo Asilo de Damas*, 109 D.P.R. 517, 522 (1980); *Oliveros v. Abréu*, 101 D.P.R. 209, 226 (1973); véase, además, *Colón Prieto v. Géigel*, 115 D.P.R. 232, 239-240 (1984).

Para establecer un caso *prima facie* contra un profesional de la salud, el demandante viene obligado a: (1) presentar prueba sobre las normas mínimas de conocimiento y cuidado aplicables al área en cuestión, (2) demostrar que el demandado incumplió con estas normas en el tratamiento del paciente, y (3) que esto fue la causa del daño sufrido por el paciente. Véanse, *Blás v. Hosp. Guadalupe*, 146 D.P.R. 267, 322 (1998); *Santiago Otero v. Méndez*, 135 D.P.R. 540, 549 (1994); *Rodríguez Crespo v. Hernández*, 121 D.P.R. 639, 650 (1988); *Medina Santiago v. Vélez*, 120 D.P.R. a la pág. 385; *Matos v. Adm. Serv. Médicos de P.R.*, 118 D.P.R. 567, 569 (1987).

Existe una presunción de que un profesional de la salud ha observado un grado razonable de cuidado y atención en la administración de tratamiento y que los exámenes practicados al paciente han sido adecuados. El hecho de que un paciente haya sufrido un daño o que el tratamiento no haya tenido éxito es insuficiente, de por sí, para derrotar dicha presunción. Corresponde a la parte demandante controvertir la misma con prueba que demuestre algo más que la mera posibilidad de que el daño se debió al incumplimiento por parte del demandado de su obligación profesional. La relación de causalidad no puede establecerse a base de meras especulaciones o conjeturas, sino al igual que en todo caso civil, por preponderancia de la prueba. Si la evidencia señala a la existencia de múltiples causas del daño, no puede imponérsele responsabilidad al profesional de la salud a menos que del conjunto de la evidencia surja que con mayor probabilidad la actuación negligente fue la causa del daño. Véanse, *Blás v. Hosp. Guadalupe*, 146 D.P.R. a la pág. 322; *Ramos, Escobales v. García, González*, 134 D.P.R. 969, 976 (1993); *Rodríguez Crespo v. Hernández*, 121 D.P.R. a la pág. 650; *Viuda de López v. E.L. A.*, 104 D.P.R. 178, 183 (1975).

A los médicos y otros profesionales de la salud se les reconoce una amplia discreción profesional en su trabajo. No existe responsabilidad por impericia cuando el demandado se enfrenta a una situación en la cual cabe una duda educada y razonable sobre el curso de tratamiento a seguir. El error de juicio es oponible como defensa, siempre y cuando el profesional de la salud hubiese efectuado esfuerzos concienzudos para enterarse y

cerciorarse de los síntomas y de la condición del paciente, agotando los medios de diagnóstico a su disposición y cuando las autoridades están divididas sobre el curso a seguir. *Santiago Otero v. Méndez*, 135 D.P.R. a las págs. 549-550; *Ramos, Escobales v. García, Gonbzález*, 134 D.P.R. a la pág. 975; *Lozada v. E.L.A.*, 116 D.P.R. 202, 217 (1985); *Cruz v. Centro Médico de P.R.*, 113 D.P.R. 719, 729-730 (1983); *Oliveros v. Abreu*, 101 D.P.R. a la pág. 228; véase, además, *Blás v. Hosp. Guadalupe*, 146 D.P.R. a la pág. 296.

De ordinario, lo que constituye o no una práctica profesional adecuada en un caso de impericia debe ser establecido mediante testimonio pericial. Véanse, *Ríos Ruiz v. Mark*, 119 D.P.R. 816, 828-829 (1987); *Reyes v. Phoenix Assurance Co.*, 100 D.P.R. 871, 877 (1972); *Guzmán v. Silén*, 86 D.P.R. 532, 538 (1962). No corresponde a los tribunales prescribir tratamientos de salud. Véanse, *Ríos Ruiz v. Mark*, 119 D.P.R. a la pág. 821; *Cruz v. Centro Médico de P.R.*, 113 D.P.R. a la pág. 736.

En la evaluación de este tipo de prueba, el tribunal apelativo está en la misma posición que el juzgador de primera instancia. *Ramos, Escobales v. García, Gonbzález*, 134 D.P.R. a la pág. 976; *Ríos Ruiz v. Mark*, 119 D.P.R. a la pág. 820; *Cruz v. Centro Médico de P.R.*, 113 D.P.R. a la pág. 721; véanse, además, *Dye-Tex Puerto Rico, Inc. v. Royal Insurance Company of Puerto Rico*, 150 D.P.R. 658 (2000); *Culebra Enterprises Corp. v. E. L.A.*, 143 D.P.R. 935, 952 (1997).

En el presente caso, según hemos visto, la parte apelante ha planteado que Dr. Morales fue un co-causante de los daños sufridos por esta parte. Se alega, específicamente, que dicho profesional de la salud actuó negligentemente al no detectar que la condición de la Sra. Rivera se debía a un cáncer y al no actuar con premura para verificar el origen de su lesión. Esta tardanza, unida a la negligencia original de los otros facultativos que atendieron a la causante, propició que el cáncer no fuera detectado a tiempo para ser tratado, lo que llevó a que la parte apelante sufriera daños.

En su moción de sentencia sumaria, el apelado alegó que no existía evidencia para establecer que él hubiera actuado con negligencia. Dicha parte alegó que él había recomendado a la Sra. Rivera que se realizara una segunda biopsia de manera inmediata y que fue ésta quien no estuvo inclinada, de primera impresión, a someterse a dicha prueba, porque la primera biopsia le había resultado dolorosa.

Lo cierto es que existe controversia entre las partes sobre este punto. La parte apelante alega que el Dr. Morales no indicó a la Sra. Rivera que resultaba necesario que ella se sometiera a la biopsia *"inmediatamente"*, según alega el apelado. Dicha parte aduce que el apelado no trasmitió a la Sra. Rivera que existiera premura alguna en realizar la biopsia.

Al contrario, según la prueba ofrecida por los apelantes, el Dr. Morales le indicó a la Sra. Rivera que ella debía esperar hasta después del período navideño para realizarse la biopsia en el Recinto de Ciencias Médicas. Al entrevistar a la paciente en enero de 1997, el apelado supuestamente ordenó a la causante someterse a pruebas para alergía, sin mostrar urgencia alguna en la necesidad de llegar a una determinación sobre si la Sra. Rivera efectivamente tenía cáncer. El perito de la parte apelante, Dr. Elmore, opinó que dicha actuación había constituido impericia médica.

Somos de la opinión, en vista de lo anterior, que el Tribunal de Primera Instancia debió de haberse abstenido de dictar sentencia sumaria sobre la reclamación.

El apelado alega que el informe del Dr. Elmore está basado en meras conjeturas, porque dicho perito no tuvo acceso al récord médico del tratamiento brindado por el apelado. Alega, además, que no existe una base para imponerle responsabilidad en el caso de autos.

Reconocemos que las alegaciones contra dicha parte no parecen, de su faz, contundentes. A diferencia de

las alegaciones de los apelantes contra el Dr. Garrratón, la responsabilidad del Dr. Morales en este caso no está predicada en la interpretación incorrecta por parte de dicho facultativo de los exámenes tomados a la causante, ni de su omisión de ordenar las pruebas diagnósticas necesarias. Más bien se atribuye responsabilidad al Dr. Morales por la dilación de varias semanas en la repetición de los exámenes de biopsia, la que fue provocada en parte por el hecho de que el Recinto de Ciencias Médicas estaba cerrado por resultar ser período navideño.

No obstante, aunque reconocemos que las bases de la reclamación contra el Dr. Morales no resultan inexpugnables, no podemos decir que los apelantes carezcan enteramente de evidencia para establecer su causa de acción contra dicho facultativo.

Según hemos señalado, consideramos que existe, cuando menos, controversia real sustancial entre las partes sobre este particular. En estas circunstancias, el Tribunal de Primera Instancia no debió haber declarado con lugar la moción del apelado, en esta etapa. *Rosario v. Nationwide Mutual*, **2003 J.T.S. 34**, a las págs. 641-642; *Jusino et als. v. Walgreens*, **2001 J.T.S. 154**, a la pág. 374; *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 D.P.R. a la pág. 914; *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 D.P.R. a las págs. 722-723.

Observamos que, según se desprende del informe pericial del Dr. Elmore, dicho perito no ha tenido acceso a los récords del apelado, por lo que su opinión en cuanto a las ejecutorias de dicha parte posiblemente no debe considerarse definitiva. El Tribunal Supremo de Puerto Rico ha advertido, en este sentido, que un Tribunal no debe dictar sentencia sumaria, salvo que la parte promovida haya tenido una oportunidad adecuada de concluir el proceso de descubrimiento de prueba. *García Rivera et als. v. Enríquez*, **2001 J.T.S. 15**, a la pág. 820; *Pérez v. El Vocero de P.R.*, 149 D.P.R. 427, 447 (1999); *Medina v. M.S. & D. Química P.R., Inc.*, 135 D.P.R. a la pág. 733.

En la situación de autos, contrario a la apreciación de la distinguida Sala recurrida, no estimamos que el récord sustente la solicitud de sentencia sumaria del apelado.

Por los fundamentos expresados, se revoca la sentencia apelada. Se devolverá el caso al Tribunal de Primera Instancia para procedimientos consistentes con este dictamen.

Lo pronunció y lo manda el Tribunal y lo certifica la señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General